GERALD C. NICHOL, District Attorney, Dane County
Your predecessor requested an opinion whether tenants may organize for mutual self-help purposes with respect to *Page 119 
rental properties. You indicate that you still have need for advice in this area.
I am of the opinion that tenants can organize. However, in the achievement of their goals, such persons, including any profit or nonprofit corporation, must use methods which are not proscribed by law.
You specifically inquire whether the Madison Tenants Union must obtain a real estate broker's license to engage in certain activities exercised on behalf of tenant members.
Although the information furnished with the inquiry of your predecessor did not disclose information as to the organization of the Madison Tenants Union, the Wisconsin Real Estate Examining Board has furnished us with a file of some substance. I am advised that much of this material was previously made available to your office.
The Tenants Union was previously organized as an unincorporated voluntary association. Its constitution provided for membership on payment of fee, an executive committee of ten who had power to enact and repeal bylaws and to carry out administrative functions. The executive committee had limited power to enter into contracts which directly affected any member or group of members, subject to ratification by a voting majority of the members affected. The constitution stated that one of the purposes of the association was to promote:
"* * * better landlord-tenant relations, better housing conditions, fair rents, just and equitable settlement of disputes and grievances between landlords and tenants, and to secure leases between landlords andtenants which promote the above purposes, through collective bargaining." (See Exhibit B, attached.)
On or about August 4, 1970, the MTU reorganized as a nonstock, nonprofit corporation under ch. 181, Stats. The stated purpose was "to organize and assist tenants in their efforts to improve housing terms and conditions in the Madison, Wisconsin area." (Exhibit A, attached.)
Chapter 136, Stats., was renumbered to ch. 452, by ch. 336, Laws of 1969. *Page 120 
Section 452.03, Stats., provides in part:
"No person shall engage in or follow the business or occupation of, or advertise or hold himself out as or act temporarily or otherwise as a real estate broker or salesman without a license."
Section 452.01 (2) (a), Stats., defines a real estate broker to include one who:
"(a) For another, and for commission, money or other thing of value, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of an interest or estate in real estate."
Where rental of real estate is involved, violation would result only where it was proven that there was (1) an offer or attempt to negotiate, (2) it was performed for another and (3) for a commission, money or other thing of value.
On the basis of the documented information furnished by the Wisconsin Real Estate Examining Board, it is my opinion that certain members of the voluntary association and officers of the corporation probably did engage in activities which would require licensing under ch. 452, Stats. If the corporation is to continue to engage in activities of negotiation of rental leases for others, even though they be tenant members, and for a consideration, such corporation would also require a license.
On the basis of the following exhibits, there is no question but that there were acts of negotiation or attempted negotiation of contracts for the rental of real estate on behalf of another, and for consideration.
The property involved was never that of the association or corporation. It was owned by third-party landlords. Actual contracts for the rental of an interest in real estate were involved. In certain cases it appears that representatives of MTU negotiated or attempted to negotiate specific lease contracts between a landlord and a tenant and acted to withhold rent, in escrow, with respect thereto. In other cases the attempted contracts between the MTU and landlord would govern, at least in part, specific terms of individual *Page 121 
lease contracts between the landlord and tenant. The negotiation or attempted negotiation was on behalf of another, individual tenants who were, or, for the purposes of participation, became members of the voluntary association or corporation. More is involved than mere recommendation of suggested lease terms or airing of grievances. In certain instances, it appears that the union representatives were in part acting, or sought authority to act, for the landlord as against certain tenants or tenant members. (Exhibit F, par. 3.)
It will be noted from exhibits hereinafter referred to that consideration was received or attempted to be collected from both tenants and from the landlord.
Where negotiation or attempt to negotiate the rental of an interest in real estate for another is proven, consideration will be presumed. Section 452.19, Stats., provides:
"In any prosecution for violation of this chapter proof that a person acted as a broker or agent or salesman is prima facie proof that compensation therefor was received or promised."
Our court has construed "negotiation" as it relates to a broker's right to a commission in listing contract disputes to mean that the efforts of the broker to interest a prospective purchaser must have proceeded to the point where the prospect would be considered a likely purchaser.
Munson v. Furrer (1952), 261 Wis. 634, 53 N.W.2d 697.
Dunn Stringer Investment Co. v. Krauss (1953), 264 Wis. 615,618, 60 N.W.2d 346.
George Nangen Co. v. Kenosha Auto Transport Corp. (1965),238 F. Supp. 157.
Jessup v. La Pin (1967), 35 Wis.2d 186, 150 N.W.2d 342.
Section 452.01 (2) (a), Stats., is broader, however, in that it also covers attempts to negotiate, that is, attempts to complete a contract for the sale or rental of real estate for others and for a commission. *Page 122 
For a discussion of the words "attempts to negotiate" as used in sec.452.01 (2) (a), Stats., see 55 OAG 188, 189 (1966).
Indications that representatives of MTU did negotiate or attempt to negotiate is demonstrated by the red-marked areas of the following exhibits or by the exhibit itself:
1. Exhibit C. Publication of Tenants Union entitled "Build the Community — Build the Nation." Paragraph 2 (offer to negotiate).
2. Exhibit B. Constitution of Madison Tenants Union. Article I (offer to negotiate).
3. Exhibit E. Madison Tenants Union publication entitled "A Brief History of the Madison Tenant Union." Page 2, paragraphs 3 and 4, and page 3, paragraph 5. (Negotiations — Bandy, Heins and Engen.)
4. Exhibit D. Publication of Madison Tenants Union entitled "Madison Tenant Union Policy Statement." Page 2, paragraph 4 (offer to negotiate).
5. Exhibit F. Proposed agreement as negotiated between Madison Tenants Union and landlord, William T. Bandy.
6. Exhibit G. Proposed lease as negotiated by Madison Tenants Union with landlord, Richard Heins, and agreement as to Grievance Board.
7. Exhibit H. Madison Tenants Union proposed agreement with landlord, P.S. Engen.
8. Exhibit I. Madison Tenants Union proposed agreement between its Local No. 4 and landlord, Philip Engen.
9. Exhibit J. Part I of Madison Tenants Union proposed collective bargaining agreement with all landlords.
10. Exhibit K. Part II of Madison Tenants Union proposed collective bargaining agreement-lease with all landlords.
11. Exhibit L. Letter of January 5, 1970, from Madison Tenants Union to landlord, Phil Engen. (Attempt to negotiate.) *Page 123 
12. Exhibit M. Letter of February 19, 1970, from Madison Tenants Union to landlord, Philip S. Engen. (Attempt to negotiate.)
13. Exhibit N. Letter of January 13, 1971, from Madison Tenants Union to landlord, Philip Engen. (Attempt to negotiate.)
14. Exhibit O. Memorandum of investigator, Walter R. Eglsaer, as to conferences with landlord, Richard Heins, and his attorney, relative to Tenants Union negotiations as to a lease and grievance procedure.
As evidenced by the enclosed exhibits attached hereto, the Madison Tenants Union receives benefits and compensation in one of several ways. These benefits and compensation, depending on the circumstances of specific cases, may be of the type and nature contemplated by the language in sec. 452.01 (2) (a), Stats., which states "* * * for commission, money or other thing of value * * *."
1. Exhibit P. Bylaws of Madison Tenants Union, paragraph 7. Membership dues of $2.00 charged by Madison Tenants Union.
2. Exhibit F, page 4; Exhibit G, page 8; Exhibit J, page 1. Landlord required to pay to Madison Tenants Union a fee of $1.00 per month per tenant.
3. Exhibit F, page 4; Exhibit J, page 4, paragraph 28. Option to purchase property of landlord with percentage of landlord mortgage payment accruing as equity in the property to Madison Tenants Union.
4. Exhibit J, page 3, paragraph 25. Interest on rent deposits withheld from landlord and paid to Madison Tenants Union to accrue to Tenants Union.
5. Exhibit Q. Rent reduction kickback. Fifteen percent of rent reduction obtained for the tenant by the Tenants Union is to be retained by the Union and any interest on rent deposits to accrue to Tenants Union.
Further investigation should be made as to the compensation received by officers or agents of the corporation. It *Page 124 
may develop that commissions as well as salaries are involved.
The Real Estate Examining Board or your office has a number of avenues to take in the face of an alleged violation.
Section 452.18, Stats., provides for a fine of not more than $1,000 or imprisonment of not more than six months, or both, and requires prosecution by the district attorney.
Section 452.10 (1), Stats., provides that the Examining Board may conduct an investigation and hearing on notice as to whether any person has acted as a real estate broker. It is questionable whether such procedure would be productive, and could delay or prejudice a long-term solution by way of criminal action or injunctive relief.
Section 452.10 (1a), Stats., provides that the Board, in the alternative, can proceed in circuit court through its staff counsel for a temporary restraining order or injunction or writ of ne exeat to determine the matter if it believes that continuation of the activity might cause injury to the public interest.
See State ex rel. Real Estate Examining Board v. Gerhardt (1968),39 Wis.2d 701, 159 N.W.2d 622.
I suggest that you consult further with the representatives of the Wisconsin Real Estate Examining Board, or other complainants, who are willing to cooperate and sign a complaint, and marshal specific facts with respect to one or more specific incidents at given dates of time and persons before proceeding.
RWW:RJV