J. HENRY CROMARTIE v. WILLARD A. COLBY, JR., AND WIFE, EILEEN COLBY.

(Filed 29 April, 1959.)

**Brokers and Factors § 6—**

> Evidence tending to show that property was listed by the owners with plaintiff broker, that the broker procured a client interested in the property and advised the owners of the name of the client, and that the owners sold the property to the client at the agreed price before the broker had opportunity to complete the negotiations and show the property to the client, *is held* to preclude involuntary nonsuit in the broker's action for commission.

APPEAL by plaintiff from *Nettles, E. J.,* at September 15, 1958 Regular Schedule "B" Civil Term of MECKLENBURG.

Civil action to recover certain amount of commissions of brokerage alleged to be due to plaintiff by defendants in the sale of property of defendants.

It is admitted in the pleadings that plaintiff at the time mentioned in the complaint was a duly licensed real estate agent or broker, and was doing business as J. H. Cromartie Company in Mecklenburg County, North Carolina; that in September 1956, defendants were, and for sometime had been the owners of a house and lot used as a residence at 2222 Cloister Drive in said county as shown on map recorded in Map Book 6 at pages 817 and 819 of the Mecklenburg Registry; "that on or about March 20, 1957, defendant Eileen Colby talked with the plaintiff about selling defendants' house"; and that defendants sold and conveyed to Norman J. Mears and wife, Fannie Mae F. Mears, the lot, and the house thereon, at 2222 The Cloisters, as evidenced by a deed which is recorded in Mecklenburg Registry in Book 1913 at page 326, at the sale price of $45,000.00.

Upon the trial in Superior Court plaintiff offered in addition to the foregoing admissions evidence tending to show the following narrative of events transpiring between plaintiff and defendants:

CROMARTIE *v.* COLBY.

Plaintiff was acquainted with and had done business as real estate broker with the defendants in this cause. The plaintiff talked with the defendant Mr. Colby in September 1956, and reported to him that Mrs. Colby had mentioned to him on several occasions that she would like to sell their house. The defendant, Mr. Colby, said that he did not particularly want to move but that if he could get the price he wanted for the house he would be glad to sell it. Plaintiff told him whenever he got ready to sell he would be glad to hear from him.

And on the morning of 20 March, 1957, the defendant, Mrs. Colby, called plaintiff and told him that they had decided to sell the house and she wanted him to come out and talk to her about it. The plaintiff went to the Colby house described in the pleadings and testimony herein and had discussion of the details of the construction of the house and the price they wanted for it, and finally agreed on price of $45,000. and plaintiff told her the commission would be $2,250.

In this conversation the defendant Mrs. Colby told plaintiff that she "only wanted the plaintiff to handle the property," and for it not to be put in listing bureau but if plaintiff desired to call in two or three real estate brokers it would be all right with her. And when plaintiff left the house on this occasion he asked Mrs. Colby to give consideration to putting the property in the Multiple Listing Bureau, and she told him she would and would call him at a later date. She did call him on or about April 8 and told him that she had discussed the matter with her husband and that they had decided to go ahead and put the property in the Multiple Listing Bureau.

During the conversation on April 8 plaintiff told Mrs. Colby of a lengthy conversation he had had with a client on that date with whom he had gone into full details about the house and that she had decided that she wanted to see the house, especially because of its location; and that this lady's name was Mrs. Mears, and she is one of the persons to whom the property was conveyed. Plaintiff told Mrs. Colby that he had an appointment to show the property to Mrs. Mears the next day. And while these negotiations were going on, and before plaintiff had an opportunity to show the property to Mrs. Mears, the defendant sold the property to Mrs. Mears at the price of $45,000.

Plaintiff, on 12 April, 1957, addressed a letter to defendant Willard A. Colby, Jr., as appears in the record, page 13, in which the plaintiff recited certain of the facts of this transaction. The letter was mailed at approximately 12 o'clock noon, same day, and about 3 o'clock that afternoon the defendant Willard A. Colby, Jr., and plaintiff had discussed the matter at length, Colby having stated that he

had received the letter and further stated to the plaintiff "I am quite sure you have earned the commission and have gotten the run-around but I am not going to make any effort to pay your commission because I was offended at this letter I have just received."

At the close of plaintiff's evidence defendants moved for judgment as of nonsuit. And to judgment in accordance therewith, plaintiff excepts and appeals to Supreme Court and assigns error.

*James B. Ledford, J. F. Flowers for plaintiff, appellant.*

*McDougle, Ervin, Horack & Snepp, C. Eugene McCartha for defendants, appellees.*

WINBORNE, C. J. Taking the evidence in the instant case offered upon the trial in Superior Court in the light most favorable to the plaintiff, and giving to him the benefit of all reasonable inferences to be drawn therefrom, this Court holds that it is sufficient to make a case for the jury in accordance with the facts alleged in the complaint.

It is enough to refer to what is said in *Trust Co. v. Goode,* 164 N.C. 19, 80 S.E. 62. The headnote there epitomizes the principle there set forth in this manner: "While real property remains in the hands of a broker for the purpose of sale, the owner may not consummate the sale with one who had become interested as a proposed purchaser through the efforts of the broker, and escape liability to the latter for the payment of the commissions agreed upon; and where in an action by the broker to recover his commissions, there is conflicting evidence, but the evidence viewed in the light most favorable to the plaintiff's contentions tends to establish a transaction of this character, a judgment as of nonsuit upon the evidence should not be granted." Such seems to be the case in hand.

And as the case must be returned to the Superior Court for a new trial, the Court refrains from discussing the evidence.

Hence for reasons stated, the judgment as of nonsuit entered below is hereby

Reversed.