HECHT REALTY, INC. v. KENNETH WAYNE WHISNANT AND JOHNNIE F. WHISNANT·

No. 7827SC746

(Filed 19 June 1979)

**Brokers and Factors § 6.1— real estate broker—action for value of services—procuring cause of sale—insufficiency of evidence**

   In an action in *quantum meruit* to recover the reasonable value of plaintiff real estate broker's services in procuring a buyer for defendants' property, plaintiff's evidence was insufficient to show that it was the procuring cause of the sale of defendants' property where it tended to show that plaintiff's contract for exclusive listing of the property had expired; plaintiff had knowledge of a listing contract between defendants and another broker; the other broker sold the property pursuant to this listing; an offer by the purchasers negotiated by plaintiff was met by a counter offer which was not accepted by the purchasers; defendant owners did not prevent plaintiff from making the sale under the terms as specified in their counter offer; and the final sale price was lower than the price negotiated by plaintiff and the closing date was changed from 2 April to 15 March.

   APPEAL by defendants from *Friday, Judge.* Judgment entered 23 March 1978 in Superior Court, LINCOLN County. Heard in the Court of Appeals 2 May 1979.

Plaintiff filed its complaint against defendants, Kenneth Wayne Whisnant, Johnnie F. Whisnant, Henry Neil Castles and wife, Jean Castles, and Melba Howard d/b/a Howard Realty Company, alleging: that on 22 April 1975, the Castles contacted plaintiff to discuss the purchase of property on Lake Norman and the sale of their house; that plaintiff showed the Whisnants' house to the Castles with the owners' permission and with the understanding that if plaintiff procured a purchaser, the Whisnants would pay plaintiff a six percent commission; that plaintiff and the Whisnants entered into an exclusive listing contract for the period from 13 August 1975 through 13 November 1975; that on 12 January 1976, the Castles informed plaintiff they were ready to purchase the Whisnants' property; that on 13 January 1976, defendant Wayne Whisnant agreed to pay plaintiff a five percent commission of a gross sale price of $124,000; that on 2 March 1976, a contract for the purchase of the Whisnant property was prepared with plaintiff's assistance and signed by the Castles; that said contract was taken by plaintiff to defendants, who signed it after making certain changes; that plaintiff informed the Castles of the changes made in the contract; that on 4 March 1976, Mr. Castles came to plaintiff's office and requested that his binder be returned and stated that he was no longer interested in defendants' property; the binder was returned, and on the same day, defendant Johnnie Whisnant informed plaintiff that defendants had sold the property to the Castles under a purchase agreement negotiated by Howard Realty.

Plaintiff alleged that it was entitled to recover the reasonable worth of its services in bringing defendants and the Castles together, through which defendants entered into a real estate purchase agreement for defendants' property, based on action for *quantum meruit;* that defendants, the Castles and Howard Realty, had conspired to deprive plaintiff of its commission; and that judgment should be entered against them jointly and severally for $7,440 compensatory damages, and $20,000 punitive damages.

The Whisnants answered and alleged the affirmative defense of the Statute of Frauds since the complaint failed to allege that an agreement between plaintiff and these defendants was written. Defendants also denied that plaintiff was entitled to any relief.

Howard Realty filed a motion for summary judgment which was allowed, and no appeal was taken. On 16 May 1977, defendants (Whisnants) filed a motion for summary judgment which was denied. On 27 May 1977, plaintiff took a voluntary dismissal as to the Castles. Hereinafter the word "defendants" relates to Kenneth Wayne Whisnant and Johnnie F. Whisnant.

At trial, Ms. Leatherwood, a licensed real estate broker employed by plaintiff, testified that on 22 April 1975, she showed defendants' property to the Castles. At the time, she had no listing agreement with defendants. Since she was a friend of defendants, they had given her permission to show the property. Defendants indicated to her that they would pay a standard six percent commission if she "could bring an acceptable offer to them." As alleged in the complaint, plaintiff obtained an exclusive listing of the property for the period from August 1975 through November 1975. After Ms. Leatherwood showed the property to the Castles again on 13 January 1976, after the exclusive listing had expired, she proceeded to write up an offer contingent upon the sale of defendants' property. Ms. Leatherwood discussed a five percent commission with defendant Wayne Whisnant since Howard Realty now had a listing on the property. Wayne Whisnant agreed to the commission. On 2 March 1976, plaintiff's agent prepared an offer to purchase defendants' property at a price of $124,000 which was signed by defendants.

Mr. Castles signed the offer and gave Ms. Leatherwood a $7,000 binder. Later the same day, Ms. Leatherwood met with Wayne Whisnant and told him she had the offer. Wayne Whisnant wrote on the offer that he agreed to pay a six percent commission to plaintiff if the property sold for $124,000 and then signed the offer. Everything was agreed to except the closing date and the draperies. On the same day, Ms. Leatherwood also informed Johnnie Whisnant about the offer. Both defendants met with Ms. Leatherwood and wrote into the offer that the farm bell would not remain; that the draperies and hardware would remain; that Johnnie Whisnant would receive $52,500 payable only to her at closing; that the closing date would be moved up to April 1976; and that the possession date would be negotiated with 30 days notice. Each of these operations and additions to the offer was initialed by both defendants. Ms. Leatherwood then contacted the Castles and told them that defendants wanted an earlier closing

date and longer possession period. On 4 March 1976, Mr. Castles met with Ms. Leatherwood at her office and nervously asked that his binder of $7,000 be returned. Plaintiff's president returned the binder. Later the same day, Johnnie Whisnant called Ms. Leatherwood and informed her that she had just signed an offer to sell the house to the Castles. Ms. Leatherwood informed her that if she went through with the sale, there would be a double commission.

On cross-examination, Ms. Leatherwood testified that she did not deliver the names of any prospects to defendants after the expiration of the exclusive listing contract held by plaintiff. She discussed a five percent commission with defendants on 13 January 1976, because she believed the property was exclusively listed with Howard Realty. When the offer to purchase was presented to defendants, they made changes in the offer. This counter offer was not accepted by Mr. Castles.

Johnnie Whisnant testified that: the property was sold to Mr. Castles on 15 March 1976 for $118,000; Howard Realty was paid a commission of $1,000; Mr. Castles was to pay Johnnie Whisnant an additional $500 for draperies; Wayne Whisnant would pay Johnnie Whisnant $500 for draperies; she would recover an additional $200 for the mirror; and the closing date was 15 March 1976.

John Hecht, president of his company, testified that he returned the $7,000 binder to Mr. Castles and that there was never a signed contract between the parties.

Defendants did not offer any evidence.

The jury entered a verdict finding that Ms. Leatherwood, agent of plaintiff, was the procuring cause of the sale of the property between the defendants and the Castles and that plaintiff was entitled to recover $6,080 as reasonable value of its services. Defendants thereafter filed a written motion for judgment notwithstanding the verdict supported by case law. The trial court denied the motion and entered judgment for plaintiff according to the verdict. Defendants appealed.

*Bradley, Guthery, Turner & Curry, by Clayton S. Curry, Jr., for plaintiff appellee.*

*Don M. Pendleton and Thomas M. Shuford, Jr., for defendant appellants.*

ERWIN, Judge.

Defendants' first assignment of error presents the following question: "Did the trial court err in denying the appellants' motion for a directed verdict at the close of the plaintiff's evidence and at the conclusion of all of the evidence, and in denying appellants' motion for judgment notwithstanding the verdict and for a new trial?" Defendants rely on several North Carolina cases in contending that in order for the plaintiff to recover, it must establish (1) a binding contract and (2) performance on its part, and this was not established in the case *sub judice.* Plaintiff contends that this is an action on *quantum meruit* for the reasonable worth of the plaintiff's services in procuring the Castles to purchase defendants' property. We concede that this is a close case, but we are compelled to find error and reverse the judgment entered by the trial court.

Our Supreme Court stated the rules governing this case in *Realty Agency, Inc. v. Duckworth & Shelton, Inc.,* 274 N.C. 243, 250-51, 162 S.E. 2d 486, 491 (1968), as follow:

> "Ordinarily, a broker with whom an owner's property is listed for sale becomes entitled to his commission whenever he procures a party who actually contracts for the purchase of the property at a price acceptable to the owner. *Cromartie v. Colby,* 250 N.C. 224, 108 S.E. 2d 228; *Martin v. Holly,* 104 N.C. 36, 10 S.E. 83. If any act of the broker in pursuance of his authority to find a purchaser is the initiating act which is the procuring cause of a sale ultimately made by the owner, the owner must pay the commsision [sic] provided the case is not taken out of the rule by the contract of employment. *Trust Co. v. Goode,* 164 N.C. 19, 80 S.E. 62. The broker is the procuring cause if the sale is the direct and proximate result of his efforts or services. The term *procuring cause* refers to 'a cause originating or setting in motion a series of events which, without break in their continuity, result in the accomplishment of the prime object of the employment of the broker, which may variously be a sale or exchange of the principal's property, an ultimate agreement between the principal and a prospective contracting party, or the procurement of a purchaser who is ready, willing, and able to buy on the principal's terms.' 12 C.J.S. *Brokers* § 91, p. 209 (1938). *Accord,* 12 Am. Jur. 2d *Brokers* § 190 (1964)."

In *Sparks v. Purser*, 258 N.C. 55, 57, 127 S.E. 2d 765, 766-67 (1962), our Supreme Court stated:

> "The plaintiff admitted he did not have an exclusive listing. He did not introduce evidence that he obtained an unqualified offer from a purchaser, ready, able and willing to pay $36,500.00. 'It is the established law in this jurisdiction that a real estate broker is not entitled to commissions or compensation unless he has found a prospect, ready, able and willing to purchase in accordance with the conditions imposed in the broker's contract . . .' *Ins. Co. v. Disher*, 225 N.C. 345, 34 S.E. 2d 200. '. . . commissions are based upon the contract of sale.' *Trust Co. v. Adams*, 145 N.C. 161, 58 S.E. 1008; *White v. Pleasants*, 225 N.C. 760, 36 S.E. 2d 227; *Banks v. Nowell*, 238 N.C. 737, 78 S.E. 2d 761; *McCoy v. Trust Co.*, 204 N.C. 721, 169 S.E. 644.
>
> This is not a case in which the owner went behind the broker's back to take advantage of his efforts, then closed the sale himself in order to escape a broker's commission justly earned, as in *Cromartie v. Colby*, 250 N.C. 224, 108 S.E. 2d 228."

Plaintiff relies on *Lindsey v. Speight*, 224 N.C. 453, 31 S.E. 2d 371 (1944), wherein our Supreme Court held in an action by plaintiff for the reasonable value of his services in securing a purchaser for the property of defendant, who had listed such property with the plaintiff for sale, where there is evidence that plaintiff was the procuring cause of sale, a motion for judgment of nonsuit was properly overruled. In *Lindsey*, there was no intervention nor another broker as here. The plaintiff's own evidence showed that the property had been listed with Howard Realty.

We hold that *Cromartie v. Colby*, 250 N.C. 224, 108 S.E. 2d 228 (1959), is not applicable to the facts in the case before us. In *Cromartie*, evidence that tended to show that property was listed by the owners with plaintiff broker, that the broker procured a client's interest in the property and advised the owners of the name of the client, and that the owners sold the property to the client at the agreed price before the broker had an opportunity to complete the negotiations and show the property to the client, was sufficient to preclude involuntary nonsuit in the broker's action for commission.

It is well settled that on a motion by defendant for a directed verdict under G.S. 1A-1, Rule 50(a), of the Rules of Civil Procedure, the court must consider the evidence in the light most favorable to the plaintiff and may grant such motion only if, as a matter of law, the evidence is insufficient to justify a verdict for plaintiff. *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971), and *Adams v. Curtis*, 11 N.C. App. 696, 182 S.E. 2d 223 (1971). Plaintiff's own evidence showed: that it had knowledge of the contract of listing between defendants and Howard Realty; that Howard Realty, in fact, sold the property pursuant to this listing; that plaintiff's offer was met by a counter offer which was not accepted; that the final sale price was lower; that the closing date was changed from 2 April to 15 March 1976; and that defendants did not prevent plaintiff from making the sale under the terms as specified in defendants' counter offer.

On the record before us and with the direct intervention of Howard Realty, we hold that the chain of events set in motion by the plaintiff was broken to the extent that plaintiff cannot establish that it was the procuring cause of the ultimate sale of defendants' property when the evidence is taken in the light most favorable to plaintiff. Defendants' motion for a directed verdict pursuant to G.S. 1A-1, Rule 50(a), of the Rules of Civil Procedure should have been allowed by the trial court. In this day of multiple listings with two or more persons from different brokers' offices involved in one sale, the integrity of contracts of sale is very important in the marketplace.

Judgment reversed.

Judges MARTIN (Robert M.) and ARNOLD concur.