WALLACE L. BECKHAM, Avon, North Carolina, and OUTER BEACHES REALTY, INC. v. WALTER S. KLEIN, Real Estate, Laurel Hill Farm, Stormville, New York

No. 811SC1299

(Filed 5 October 1982)

1. **Brokers and Factors § 6— real estate commission—brokers not procuring cause of sale**

   Plaintiff real estate brokers were not entitled to a commission on the sale of property pursuant to their nonexclusive listing agreement where the trial court found upon supporting evidence that plaintiffs were not the procuring cause of the sale.

2. **Brokers and Factors § 6— real estate commission—express agreement—no recovery under quantum meruit**

   A real estate broker who has not procured a sale under an express agreement may not become entitled to compensation for services rendered to the seller under principles of *quantum meruit.*

APPEAL by plaintiff from *Jolly, Judge.* Judgment entered 22 May 1981 in Superior Court, DARE County. Heard in the Court of Appeals 16 September 1982.

Plaintiffs brought this action to recover a share of a brokerage fee earned on the sale of a tract of land known as the Phipps tract in Avon, North Carolina. The parties waived a jury

trial. The trial court entered judgment in pertinent part, as follows:

FINDINGS OF FACT:

1. Plaintiff Wallace L. Beckham ("Beckham") is a citizen and resident of Avon, Dare County, North Carolina, and at all times relevant hereto was a duly licensed real estate salesman in the State of North Carolina with his office and principal place of business in Avon, North Carolina.

2. Plaintiff Outer Beaches Realty, Inc. ("Outer Beaches") is a corporation organized under the laws of the State of North Carolina, with its principal place of business in Avon, North Carolina. Outer Beaches employed Beckham in the Fall of 1977 and throughout 1978.

3. Defendant Walter Klein ("Klein") is a citizen and resident of Stormville, New York, and is licensed by the State of New York as a real estate broker.

4. On June 30, 1977, Klein contacted Beckham at his real estate office in Avon, Dare County, North Carolina, and conferred with Beckham as to whether Beckham was familiar with the location and boundaries of the "Phipps-Avon Tract," a parcel of real estate containing 580 acres, more or less, located in Kennekeet Township, Dare County, North Carolina. Beckham advised Klein that he was familiar with said tract of land and knew its location on the ground; and he gave his opinion that the property had a potential value of $7,000.00 per acre if divided into small parcels, and a potential value of $5,000.00 per acre if sold as a single tract.

5. Beckham thereafter showed Klein the property on the ground. Klein told Beckham that he had a brokerage listing on the property, and he agreed with Beckham to share the sales commission on the tract with Beckham if Beckham sold the property.

6. Beckham and Klein reached the following agreement, which was confirmed in writing, as to the commission for the potential sale of the Phipps Avon tract:

Our commission will be 7½% which you (Beckham) and I (Klein) will split 50/50 if you sell it (the Phipps Avon tract).

7. Beckham and Klein did not modify their agreement at any time thereafter, except that the 7 1/4 commission was later raised to 10%.

8. Beckham asked Klein for an exclusive listing in writing for three months to sell the Phipps Avon tract in August, 1977, but Klein declined to give such an exclusive listing.

9. Beckham, thereafter, in the Fall of 1977 and Spring of 1978, had aerial photographs made of the tract, had a proposed subdivision plat prepared and did certain survey work on the property. He attempted to sell the property to certain individuals; and also made efforts to put together a limited partnership known as Driftwood Shores for the purpose of buying and subdividing said property. He made several trips to New York City to meet with Klein and representatives of Bessemer Trust Company, which was representing the Phipps heirs. In the course of these activities he made an offer to purchase the tract of land in behalf of the limited partnership. Due to various factors, the sale of the property to the limited partnership was not consummated. Beckham was to have an interest in the limited partnership; Klein was not.

10. Thereafter, in 1978, Beckham and Klein each made efforts to sell the property to various parties. They kept in contact by telephone calls and correspondence as to the progress being made by each. Although they kept in touch with each other, they were not working together as partners, *de facto* or otherwise.

11. In April, 1978, Klein contacted one C. C. Canada ("Canada"), a South Carolina real estate broker, to attempt to procure a sale of the Phipps Avon tract.

12. On May 16, 1978, Klein telephoned Beckham and told Beckham that Klein had some prospects in the textile business, who were also land developers, from Greenwood Mills, Inc., in South Carolina and that they were interested in buying the property.

13. In early May, 1978, Canada associated one David Lawrence, a licensed North Carolina real estate broker and surveyor, and then arranged to bring one Posey Davis

("Davis") of Greenwood Mills, Inc. to view the Phipps Avon tract and to meet with Lawrence.

14. On Sunday, May 21, 1978, Klein visited Beckham's home in Avon. He had dinner with Beckham and the two of them reviewed certain maps, aerial photographs and a proposed subdivision of the Phipps Avon tract, all of which had been prepared or caused to be prepared by the plaintiff.

15. On Monday, May 22, 1978, Davis and Canada met Klein and Beckham at Beckham's real estate office in Avon. Beckham, in his automobile, drove Klein and Canada around the area and thereafter carried them across part of the tract with the use of his four-wheel drive vehicle. Subsequently, Klein, Canada and Davis borrowed Beckham's maps and photographs to review and study overnight.

16. On Tuesday, May 23, 1978 Klein, Davis and Canada returned Beckham's maps and aerial photographs.

17. Thereafter, Klein told Beckham he thought Davis was interested. However, Klein encouraged Beckham to continue his efforts to sell the property himself, which Beckham did.

18. After several subsequent visits by Davis, in May and June, 1978, to examine the Phipps Avon tract and to confer with Lawrence, Greenwood Mills offered, in June, 1978, to purchase the Phipps Avon tract. The offer was accepted and the sale was closed in December, 1978. Beckham was not present at any of said subsequent visits to the site.

19. On or about July 20, 1978, Klein telephoned Beckham and told him the property had been sold and to discontinue his efforts. Klein refused to tell Beckham to whom the property had been sold, the terms and conditions of the sale or the sales price. Beckham subsequently learned that the tract had been sold to Greenwood Mills, Inc.

20. Klein and Canada accompanied Davis at all times during their visits to the site on May 22 and 23, 1978. Beckham did not have any contact, written or oral, with Davis between May 23, 1978, and the time the offer to purchase was made and later accepted. Beckham had no contact

at any time with any other representative of Greenwood Mills, Inc.

21. Beckham did not influence the decision of Greenwood Mills, Inc. to make an offer to purchase the Phipps Avon tract.

Based upon the foregoing FINDINGS OF FACT, the Court reaches the following CONCLUSIONS OF LAW:

WHEREFORE, the Court concludes as a matter of law that:

1. Beckham did not "sell" the Phipps Avon tract within the terms of his written agreement with Klein.

2. Beckham was not the procuring cause of the sale of the Phipps Avon tract, and is not entitled to any relief in *quantum merit* (sic).

3. There was no partnership between Klein and Beckham, and no fiduciary duty owed by Klein to Beckham.

4. Beckham did not have an exclusive listing to sell the Phipps Avon tract.

5. Beckham is therefore not entitled to recover of Klein by way of this civil action.

6. There was no legal relationship between Outer Beaches Realty, Inc. and Klein, and no duty owed by Klein to Outer Beaches. Therefore, any rights of Outer Beaches to recover by way of this action would be derivative of the rights of Beckham. Since Beckham is not entitled to recover of Klein, neither is Outer Beaches.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

1. Plaintiffs have and recover nothing of defendant by way of this action.

2. Defendant have and recover nothing of Beckham by way of his counterclaim.

This the 22 day of May, 1981.

s/ J. R. JOLLY, JR.

From the foregoing judgment plaintiffs appealed.

*Twiford, Derrick & Spence, by Russell E. Twiford, for plaintiff-appellants.*

*Sanford, Adams, McCullough & Beard, by J. Allen Adams and Charles C. Meeker, for defendant-appellee.*

WELLS, Judge.

The principal question we address in this appeal is whether a real estate broker who has not procured a sale under an express agreement may nevertheless become entitled to compensation for services rendered the seller under principles of *quantum meruit.* We answer this question in the negative and affirm the judgment below.

By their first assignment of error, plaintiffs contend that the evidence before the court was insufficient to support the findings numbered 13, 20, and 21. A trial court's findings of fact in a non-jury trial have the force and effect of a jury verdict and are conclusive on appeal if supported by competent evidence, even if there is evidence to the contrary which would support different findings. *Henderson County v. Osteen,* 297 N.C. 113, 254 S.E. 2d 160 (1979); *Williams v. Insurance Co.,* 288 N.C. 338, 218 S.E. 2d 368 (1975). We have carefully reviewed the record and find that each of the challenged findings of fact is supported by competent evidence. These assignments are therefore overruled.

[1] Plaintiffs contend that they were entitled to a recovery of defendant based on their contract. Generally, a broker becomes entitled to a commission only if he is the procuring cause of the sale. *Realty Agency, Inc. v. Duckworth & Shelton, Inc.,* 274 N.C. 243, 162 S.E. 2d 486 (1968); *Realty, Inc. v. Whisnant,* 41 N.C. App. 702, 255 S.E. 2d 647, *disc. rev. denied,* 298 N.C. 299, 259 S.E. 2d 912 (1979). Of course, the contract of the parties can vary this general rule. *Realty Agency, Inc.,* supra. For a broker to be the "procuring cause", the sale must be the direct and proximate result of his efforts or services. *Id.*

The facts found in the present case show that the parties had a contract which did not take this case out of the general rule stated above. These findings support the conclusion that plaintiffs

were not the procuring cause of the sale. The trial court's denial of recovery to plaintiffs based on the contract was correct.

[2] The trial court found that Beckham performed various services for defendant including preparing maps and aerial photographs and driving defendant, Canada and Davis around and over the subject property. Plaintiffs contend that even if they were entitled to no recovery on the express contract, the trial court erred in denying recovery in *quantum meruit* for services rendered. Recovery in *quantum meruit* may be had where the facts show that an implied contract exists. *Helicopter Corp. v. Realty Co.*, 263 N.C. 139, 139 S.E. 2d 362 (1964). But it is well established that where an express contract concerning the same subject matter is found, no contract will be implied. *Supply Co. v. Clark*, 247 N.C. 762, 102 S.E. 2d 257 (1958); *Realty, Inc.*, supra; *Campbell v. Blount*, 24 N.C. App. 368, 210 S.E. 2d 513 (1975). Where parties expressly agree, they are presumed to have contemplated and assumed the risks normally attendant to their bargain. All the services Beckham rendered and upon which plaintiffs rely in their *quantum meruit* theory are services contemplated in the parties' express agreement and the express contract therefore controls. *Realty, Inc.*, supra.

The judgment of the trial court is

Affirmed.

Judges VAUGHN and WEBB concur.