CAROLANTIC REALTY, INC., Plaintiff v. THE MATCO GROUP, INC. and CAN-AM
SEVEN PROPERTIES, LLC, Defendants

No. COA01-1091

(Filed 16 July 2002)

**1. Brokers— commission—actual execution of lease required**

Plaintiff broker was not entitled to a commission on a commercial real estate lease pursuant to the language of the listing agreement where the undisputed facts established that the lease which was eventually executed was the direct and proximate result of plaintiff's efforts, but the listing agreement indicated that the parties intended to condition the commission upon the actual execution of a lease or the formation of a binding agreement to execute the lease by the expiration of the exclusive listing period plus a grace period, and the lease was not executed and no binding contract to enter the lease was made within that time.

**2. Brokers— commission—listing agreement—waiver of termination date**

Summary judgment was improperly granted for defendant in plaintiff broker's action for the commission on a commercial real estate lease where there was a genuine issue of fact as to whether defendants waived the agreement's termination date. Plaintiff alleged and presented evidence that he continued to work on the lease through the signing date and that the parties agreed to but never signed an extension of the termination date.

**3. Brokers— commission—services during grace period— quantum meruit**

There was a genuine issue of material fact as to whether a real estate broker was entitled to recovery of a commission on quantum meruit for a lease executed after the listing period expired. No contract will be implied where an express contract exists, but the express contract here was applicable only if services during the listing period resulted in a sale during the grace period. There was no contract concerning services rendered subsequently.

Appeal by plaintiff from an order entered 11 July 2001 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 22 May 2002.

CAROLANTIC REALTY, INC. v. MATCO GRP., INC.

[151 N.C. App. 464 (2002)]

*Manning, Fulton & Skinner, P.A., by William C. Smith, Jr., for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Pressly M. Millen, for defendant-appellees.*

HUNTER, Judge.

Carolantic Realty, Inc. ("plaintiff") appeals the trial court's denial of its motion for summary judgment, and the trial court's grant of summary judgment in favor of The Matco Group, Inc. ("Matco") and CAN-AM Seven Properties, LLC ("CAN-AM") (collectively "defendants"). We reverse the trial court's grant of summary judgment in favor of defendants and remand for further proceedings.

The undisputed facts are as follows. Plaintiff, a real estate company, entered into a contractual brokerage relationship with Matco, a corporation authorized to enter into listing contracts on behalf of CAN-AM. Between 1996 and 1999, and pursuant to three separate listing agreements between plaintiff and Matco, plaintiff undertook efforts to lease or sell a warehouse space in Raleigh ("the Property") owned by CAN-AM. The third listing agreement ("the Listing Agreement") gave plaintiff the "exclusive right to Lease and/or Sell the Property" during the "exclusive [one-year] listing period" from 25 February 1998 through 24 February 1999. Paragraph 7a(i) of the Listing Agreement states: "The commission shall be paid upon delivery of the deed or other evidence of transfer of title or interest." Paragraph 7b(i) states: "Commissions shall be earned on execution of a lease by Seller/Landlord and a Buyer/Tenant in accordance with the following rates . . . ." Paragraph 8 of the Listing Agreement further provides, in pertinent part:

> If within 45 days after the expiration of the exclusive listing period, [Matco] shall directly or indirectly lease or agree to lease or sell or agree to sell the property to a party to whom [plaintiff] . . . has communicated concerning the property during this exclusive listing period, [Matco] shall pay [plaintiff] the same commission to which they would have been entitled had the sale or lease been made during the exclusive period . . . .

As noted, the "exclusive listing period" expired on 24 February 1999, and, therefore, the forty-five day "grace period" set forth in paragraph 8 ended on 10 April 1999.

In the fall of 1998, during the exclusive listing period of the Listing Agreement, plaintiff communicated with the State of North Carolina Department of Health and Human Services, Disability Determination Services ("DDS") as a possible tenant. The State had put out a contract seeking to lease property, and had provided detailed lease specifications to prospective bidders. On behalf of Matco, plaintiff made a bid for the contract by means of completing and submitting a "PO-28 Proposers Form" on 12 October 1998. The PO-28 identified plaintiff as Matco's agent on the bid. In late October and November of 1998, a representative from the State visited the property, met with Matco officials, and conducted "lease negotiations" with defendants. Plaintiff attended the bid openings on 19 November 1998, at which time Matco's bid was determined to be the low bid on the contract. The State subsequently ceased all efforts to locate lease property for DDS, and architects and designers for defendants and the State began "intensive space planning efforts . . . to prepare a functional layout" of the property. The parties determined that DDS would need approximately 8,000 square feet of additional space, and defendants "agreed to provide it" and also agreed to reserve an additional 8,000 to 10,000 square feet of "expansion space" for DDS adjacent to the leased space.

On 3 December 1998, the State sent defendants a "draft of the lease document," which was approved by defendants. Toward the end of December of 1998, the Council of State officially recommended that the State lease the property from defendants, and the State decided not to exercise an option to renew the lease on the property then occupied by DDS. On 5 January 1999, the Governor and Council of State, on behalf of the State, officially approved the execution of a lease agreement for the property in accordance with the terms of defendants' offer. In January and February of 1999, the State and defendants engaged in numerous conversations and meetings regarding the details of preparing for "the State's move-in," including the selection of a floor plan. On 26 April 1999, lease documents were distributed by DDS to defendants. The final lease agreement between defendants and the State ("the Lease Agreement") was executed on 20 May 1999.

On 23 September 1999, plaintiff filed a complaint against defendants seeking a commission of $476,940.00 under the Listing Agreement based upon a breach of contract theory or, in the alternative, a *quantum meruit* theory, and seeking attorney's fees under the Listing Agreement. Plaintiff and defendants moved for

summary judgment. On 11 July 2001, the trial court entered an order denying plaintiff's motion for summary judgment and granting defendants' motion for summary judgment. Plaintiff appeals.

On appeal, plaintiff argues that the trial court erred (1) in granting defendants' motion for summary judgment and (2) in denying plaintiff's motion for summary judgment. Pursuant to N.C. Gen. Stat. § 1A-1, Rule 56 (2001), a motion for summary judgment is properly granted if, considering the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. *Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 393-94, 499 S.E.2d 772, 775 (1998). The moving party bears the burden of showing that there are no genuine issues of material fact. *Id.* at 394, 499 S.E.2d at 775. "The evidence is to be viewed in the light most favorable to the nonmoving party." *Id.*

[1] We first address whether the trial court erred in granting defendants' motion for summary judgment. The undisputed facts establish that defendants and the State did not execute the Lease Agreement until 20 May 1999, after the "exclusive listing period" and the additional forty-five day grace period had expired. However, the undisputed facts also establish that the Lease Agreement was the direct and proximate result of plaintiff's efforts to lease or sell the property. The question is whether this latter fact establishes that plaintiff is entitled to a commission under the Listing Agreement.

> Ordinarily, a broker with whom an owner's property is listed for sale becomes entitled to his commission whenever he procures a party who actually contracts for the purchase of the property at a price acceptable to the owner. If any act of the broker in pursuance of his authority to find a purchaser is the initiating act which is the procuring cause of a sale ultimately made by the owner, the owner must pay the commission *provided the case is not taken out of the rule by the contract of employment*. The broker is the procuring cause if the sale is the direct and proximate result of his efforts or services.

*Realty Agency, Inc. v. Duckworth & Shelton, Inc.*, 274 N.C. 243, 250-51, 162 S.E.2d 486, 491 (1968) (citations omitted) (emphasis added).

Defendants acknowledge the general rule as set forth in *Realty Agency*, but argue that it is inapplicable in this case due to the spe-

cific terms of the Listing Agreement. Defendants contend that the express language of the Listing Agreement indicates that the parties intended to contract around the general rule and to condition plaintiff's commission upon the actual execution of a lease (or the formation of a legally binding agreement to lease) within the exclusive listing period or within the grace period. Based upon our reading of the Listing Agreement, we are compelled to agree with defendants.

Generally, the parties to a listing agreement may agree that the broker will only be entitled to a commission upon the happening of some specified event, such as a consummated transaction. *See* Patrick K. Hetrick & James B. McLaughlin, Jr., *Webster's Real Estate Law in North Carolina* § 8-11(b), 254 (5th ed. 1999). As noted above, paragraph 7b(i) of the Listing Agreement states: "Commissions shall be earned on execution of a lease by Seller/Landlord and a Buyer/Tenant in accordance with the following rates . . . ." The Listing Agreement nowhere indicates any intention to the contrary, such as a provision that plaintiff's entitlement to a commission would be based upon procuring a party ready, willing, and able to lease or purchase the property.

Moreover, the language of the grace period provision itself further supports our conclusion. This provision states that if plaintiff communicated with a certain party during the listing period, and that party ultimately purchased (or agreed to purchase) or leased (or agreed to lease) the property within 45 days after the end of the listing period, plaintiff would be entitled to "the same commission to which [it] would have been entitled *had the sale or lease been made during the exclusive period*." (Emphasis added.) This provision implies that, but for this provision, plaintiff would *not* be entitled to a commission where he procured a buyer or lessee during the listing period who did not purchase or lease (or enter a binding agreement to purchase or lease) until shortly after the end of the listing period. This supports the conclusion that the parties intended to contract around the general rule that a commission would be earned upon the procuring of a ready, willing, and able buyer or lessee during the listing period.

In a related argument, plaintiff points to the fact that the Listing Agreement provides that plaintiff is entitled to a commission if Matco "shall directly or indirectly . . . agree to lease" the property within 45 days after the end of the listing period. Plaintiff's argument appears to be that the language "shall . . . agree to lease" must contemplate something less than an actual execution of a lease, and that the sta-

tus of the relationship between defendants and the State prior to 10 April 1999 (the end of the grace period) established at least an agreement to lease.

Although we agree with plaintiff that the language "shall directly or indirectly . . . agree to lease" must contemplate something less than an executed lease, we believe the parties simply intended to clarify that a commission would be earned, not only upon the execution of an actual lease, but also upon the formation of a binding contract whereby the parties agreed to enter into a lease at some point in the future. In other words, the likely reason for including the language "agree to lease" is to prevent the property owner from being able to avoid paying a commission by entering a contract to lease during the listing period and then delaying the actual execution of the lease until after the listing period. *See Busch v. Eisin*, 422 N.E.2d 135, 137 (Ill. App. 1 Dist. 1981). Because we do not believe that, as of 10 April 1999, there was a binding contract between defendants and the State that they would execute a lease at some point in the future, we reject plaintiff's argument.

**[2]** Although plaintiff was not entitled to a commission in this case pursuant to the language of the Listing Agreement itself, we nonetheless conclude that summary judgment in favor of defendants was improperly granted for two reasons. First, plaintiff argues, and we agree, that there are genuine issues of material fact as to whether defendants waived the termination date in the agreement.[1]

Although we have been unable to find cases in this state addressing the specific issue, it is well established in other jurisdictions and among the authorities in the area that a time limitation in a listing agreement may be expressly waived by the property owner, or impliedly waived by the acts of the property owner:

> The time limit of a brokerage contract may be waived or impliedly extended by the principal, thereby entitling the broker to a commission on a transaction consummated after the technical termination of the agency contract. A provision in a broker's contract of employment terminating it as of a given date is for the benefit of the principal, and like all other provisions in favor of a

---

1. Plaintiff also sets forth an estoppel argument, which we do not address because we believe it is, in substance, equivalent to plaintiff's waiver argument. *See* Annotation, *Broker's Right to Commission on Sales Consummated After Termination of Employment*, 27 A.L.R.2d 1348 (1953) (index listing equates "estoppel" with "waiver" in this context).

party, may be waived either expressly or impliedly if the principal chooses.

12 Am. Jur. 2d *Brokers* § 273, 920-21 (1997) (footnotes omitted), and cases cited therein; *see also* 27 A.L.R.2d 1348, 1355-57, and cases cited therein. Furthermore, whether a time limit has been waived or extended is a question of fact for the jury, and involves consideration of

whether the principal accepts the services of the broker and recognizes the contract as still in force, whether the principal tacitly or expressly encourages the broker to continue efforts to effect a sale, and whether the prior acts and conduct between the parties would lead the broker to believe that adherence to the time frame would not be insisted upon.

12 Am. Jur. 2d *Brokers* § 273, 921 (footnote omitted).

Here, defendants admitted in their answer to plaintiff's complaint that plaintiff "continued to have minimal involvement in issues related to the lease" after the listing period expired. Further, plaintiff asserts in its complaint, and defendants deny, that "Plaintiff continued to work with the State . . . on the lease at Defendants' request and with their knowledge and express and implied consent through the date of lease signing, May 20, 1999, and thereafter." In addition, plaintiff presented testimony in the form of an affidavit by Patrick Keenan, plaintiff's employee, that on numerous occasions, both prior to and after the end of the listing period, an agent for Matco requested that plaintiff continue to perform work pursuant to the Listing Agreement, and further agreed to execute an extension of the term of the Listing Agreement but never actually executed such an extension. We hold that there was sufficient evidence to establish genuine issues of material fact as to whether plaintiff might be entitled to recover a commission from defendants based upon waiver.

[3] Second, plaintiff also argues, and we agree, that there are genuine issues of material fact as to whether plaintiff is entitled to recover pursuant to a theory of *quantum meruit*. Pursuant to this theory, even if the Listing Agreement expired on 24 February 1999, and even if defendants did not waive the termination date, plaintiff might still recover in *quantum meruit* upon a showing that "(1) services were rendered to defendants; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously." *Environmental Landscape Design v. Shields*, 75 N.C. App. 304, 306,

330 S.E.2d 627, 628 (1985). Based upon the disputed factual allegations discussed above in reference to the waiver issue, we believe there were genuine issues of material fact regarding plaintiff's *quantum meruit* claim.

Defendants contend that the facts establish that plaintiff may not recover pursuant to a claim for *quantum meruit* because there was an express contract that covered the same subject matter. Defendants are correct that recovery in *quantum meruit* is appropriate only where an implied contract exists, and that, "where an express contract concerning the same subject matter is found, no contract will be implied." *Beckham v. Klein*, 59 N.C. App. 52, 58, 295 S.E.2d 504, 508 (1982). Here, however, the express contract between the parties concerned only services rendered during the exclusive listing period.

Defendants argue that the express contract concerned not only services rendered during the exclusive listing period, but also services rendered during the additional grace period. This is incorrect. The grace period provision contemplates plaintiff earning a commission if *services rendered during the exclusive listing period* result in a sale or lease during the grace period; the grace period does not contemplate any additional services rendered during the grace period. Because plaintiff's *quantum meruit* claim is based upon services allegedly rendered after the termination of the exclusive listing period, and because we hold that there was no express contract concerning services rendered after the exclusive listing period, we reject defendants' argument.

We have reviewed plaintiff's various arguments contending that the trial court erred in denying plaintiff's motion for summary judgment and find them to be without merit. Thus, we affirm the trial court's denial of plaintiff's motion for summary judgment, reverse the trial court's grant of defendants' motion for summary judgment, and remand for further proceedings.

Affirmed in part, reversed in part, and remanded.

Judges WYNN and THOMAS concur.