JESSUP, d/b/a JESSUP REALTY, Respondent, v. LA PIN, Appellant.

*April 14—May 9, 1967.*

188

For the appellant there were briefs and oral argument by *Don R. Herrling* of Appleton.

For the respondent there was a brief and oral argument by *Daniel R. Goggin* of Neenah.

BEILFUSS, J.   Two issues are presented by this case:

(1) Did the two letters between the defendant and the plaintiff amend the listing contract to extend the time in which the plaintiff could submit a list of persons with whom he negotiated during the life of the listing contract?

(2) Is the trial court's finding that the Weidens were persons with whom the plaintiff had negotiated regarding the sale of the defendant's home contrary to the great weight and clear preponderance of the evidence?

An offer and acceptance appear on the face of the letters reproduced above. There is no dispute that Mr. Jessup filed the names of prospects within the time required by Mr. La Pin's letter. The central question here is whether there was sufficient consideration to support agreement to extend the time for filing the list of persons with whom Mr. Jessup had negotiated.

The value of the extension to Mr. Jessup seems evident —it would reestablish his right to a possible commission under the six-month clause of the listing contract. The value to Mr. La Pin is also apparent—the list provided him with possible prospects to whom he might sell his residence. In response to a question by the trial court, Mr. La Pin indicated that his reason for writing the letter of September 18, 1961, was because he wanted to get the list of prospects from Mr. Jessup. Thus there is adequate consideration to support the amendment to the listing contract extending the time in which Mr. Jessup could file the list of names of people with whom he had negotiated.

The defendant contends that the claimed amendment to the listing contract is void for failure to comply with the statute of frauds, sec. 240.10 (1), Stats., which provides:

"**Real estate agency contracts.** (1) Every contract to pay a commission to a real estate agent or broker or to any other person for selling or buying real estate shall be void unless such contract or note or memorandum thereof describing such real estate, expressing the price for which the same may be sold or purchased, the commission to be paid and the period during which the agent or broker shall procure a buyer or seller or tenant, be in writing and be subscribed by the person agreeing to pay such commission."

In view of the fact that Mr. La Pin's letter of September 18, 1961, specifically refers to the valid listing contract, and in view of the fact that this letter offering the extension of time was subscribed by Mr. La Pin, "the person

agreeing to pay" the commission, the plaintiff's argument on the statute of frauds is without foundation. The parties to a valid listing contract are free to extend or amend the terms thereof by mutual agreement, and if they do so in writing, as they have here, there is no violation of the statute of frauds.

The trial court did not render an opinion, either written or oral, but did adopt and enter written findings of fact and conclusions of law.

The findings of fact did include the following concerning Jessup's negotiations with the Weidens:

". . . the plaintiff duly mailed to the defendant by registered, special delivery mail, a list of the persons with whom the plaintiff had negotiated concerning the sale of the defendant's property aforesaid; that said list included the names of Mr. and Mrs. Don Weidin, a married couple with whom the plaintiff negotiated terms concerning the sale of the defendant's home during the original term of the aforesaid listing contract between the plaintiff and defendant."

The question confronting the court is whether this finding is against the great weight and clear preponderance of the evidence.

The word "negotiation" insofar as it applies to provision of real estate broker's listing contract extending the period in which the seller is liable to the broker for a commission was defined by this court in *Munson v. Furrer* (1952), 261 Wis. 634, 638, 53 N. W. (2d) 697, as follows:

"From the foregoing authorities it would appear that if an exclusive broker's listing contract provides that the broker is to receive a commission if the property is sold by the owner subsequent to the expiration of the contract to anyone with whom the broker has *'negotiated'* within the original term of the contract, the word *'negotiated'* means that the efforts of the broker to interest a prospect must have proceeded to the point where the prospect would be considered a *likely purchaser*. Ordinarily this would be a question of fact for determination by the

jury. However, in the instant case such fact is conclusively established in favor of the plaintiff by the undisputed testimony of Mr. Yopack, that on March 9, 1948 (the date of expiration of the contract), he had concluded to submit an offer for purchase, and therefore it was proper for the trial court to determine such fact as a matter of law from such undisputed testimony."

In *Munson* the court found that the broker had brought the eventual purchaser to the point of being a "likely purchaser" on the basis of the purchaser's testimony that he was ready to submit an offer of purchase just when the term of the broker's listing contract expired.

In *E. M. Boerke, Inc., v. Williams* (1965), 28 Wis. (2d) 627, 137 N. W. (2d) 489, this court again had the opportunity to decide if the efforts of the broker to interest a prospect had proceeded to the point where the prospect would be considered a likely purchaser. During the life of the original listing contract in *Boerke,* the evidence disclosed that the eventual purchasers examined the premises and took measurements, that the broker discussed with them the physical layout of the building on the telephone, and that the price of the property was discussed, although no formal offer was made. The court held that upon this evidence the trial court was warranted in finding that the prospect was a likely purchaser during the life of the listing contract.

In light of this authority we must examine the evidence in the instant case. The only evidence in the record concerning Mr. Jessup's contacts with the Weidins during the term of the listing contract is that he showed the home on two occasions—to Mrs. Weidin on August 31st and to Mr. and Mrs. Weidin on September 4th. There is no evidence that Mr. Jessup discussed price or terms of sale, or that he even said one word to the Weidins concerning the house or anything else. The Weidins did not testify, nor is there any evidence that they made specific inquiries or offers. In short, the record is totally lacking in any evidence that the broker "negotiated" with the

Weidins or that they were brought to the point of being "likely purchasers" through his efforts. All the record shows is that the broker showed the Weidins through the La Pin home on two occasions.

It is significant that in both *Munson* and *Boerke, supra,* the eventual purchasers testified as to their attitudes toward sale during the term of the listing contract. In *Munson* the testimony was that the prospect was prepared to submit an offer to purchase; in *Boerke* the testimony was that terms and a possible price were discussed several times by the broker and the prospect. In the instant case no testimony of the prospects appears at all, and there is no evidence of so much as a passing conversation or communication between broker and prospect.

In view of this record and the law, the trial court's finding that the Weidins were people with whom the broker had negotiated during the term of the listing contract is against the great weight and clear preponderance of the evidence. This is especially so in light of the fact that this court construes terms of a broker's listing contract, and the broker's rights thereunder, strictly against the broker. *E. M. Boerke, Inc., v. Williams, supra,* at pages 633, 634.

The plaintiff would like the court to give a cross-review to the exclusion as immaterial by the trial court of the plaintiff's offer to show the plaintiff's efforts regarding the Weidins after expiration of the listing contract. The trial court seems clearly right on this because plaintiff's efforts after September 7, 1961, would not be probative of the issue—whether the broker had negotiated with the Weidins during the term of the listing contract.

The plaintiff also asserts, for the first time on this appeal, that the defendant's pleadings failed to state specific allegations in conformity with sec. 263.13, Stats., and failed to assert defenses relied on by the defendant. Not only will the court not consider this issue when raised

for the first time upon appeal but the plaintiff may not now object to the defendant's pleadings under sec. 263.19, which provides in part:

". . . If not raised by demurrer, the plaintiff waives the objection that the answer or any alleged defense therein fails to state a defense, but such waiver shall not preclude any challenge to the sufficiency of the evidence to establish a defense."

*By the Court.*—Judgment reversed, cause remanded with directions to dismiss the complaint.