FRED V. COOPER, D/B/A FRED V. COOPER REALTY v. LAWRENCE HOMER HENDERSON

No. 815DC375

(Filed 15 December 1981)

**Brokers and Factors § 6.2 — exclusive listing contract — owner's sale of property after contract terminated — whether broker had negotiated with purchaser**

Plaintiff real estate broker was not entitled to a commission upon defendant owner's sale of property within three months after the expiration of an exclusive listing contract which provided for payment of a commission to the plaintiff if the listed property was sold during the life of such agreement or within three months thereafter to any party with whom plaintiff had "negotiated" where plaintiff's evidence showed that plaintiff sold two parcels of the listed property and was paid the stipulated commission therefor; the third parcel was sold by defendant owner within 90 days after the termination of the listing contract to the mother of the female .purchaser of one of the two parcels previously sold; plaintiff knew that the mother of the female purchaser might help to finance the purchase; plaintiff gave photographs of all the property to the female purchaser so that she might send them to her mother; and plaintiff never spoke with or met the purchaser of the third parcel, and where plaintiff failed to allege or offer any evidence of bad faith on the part of defendant or evidence that the mother purchased the third tract as an agent or trustee for her daughter.

APPEAL by plaintiff from *Rice, Judge.* Judgment entered 21 January 1981 in District Court, PENDER County. Heard in the Court of Appeals 18 November 1981.

Plaintiff and defendant entered into an exclusive real estate listing contract to sell certain property owned by the defendant. Plaintiff sold two parcels of said property and was paid the

stipulated commission therefore. The third parcel was sold by the defendant within ninety days of the termination of the exclusive listing contract to Betty J. Pollmann, who is the mother of Patricia F. Copp who was one of the purchasers of the two parcels previously sold.

The contract entered into between plaintiff and defendant contained the following provision: "if the property is sold or exchanged by you, by me, or by any other party before the expiration of this listing, at any terms accepted by me, or within three months thereafter, to any party with whom you or your representatives have negotiated, I agree to pay you a commission of ten (10) percent of the gross sales price."

The defendant refused to pay plaintiff any commission on the third parcel of land which sold for $65,000. Plaintiff brought suit against the defendant on the basis of the listing contract. At trial at the close of the plaintiff's evidence, the judge allowed defendant's motion for a directed verdict pursuant to Rule 50, N.C. Rules Civ. Proc. from which plaintiff appealed.

*Trawick and Pollock by Gary E. Trawick for the plaintiff-appellant.*

*Moore and Biberstein by R. V. Biberstein, Jr., for the defendant-appellee.*

MARTIN (Robert M.), Judge.

Plaintiff's sole question on appeal is whether the trial court erred in granting the defendant's motion for a directed verdict. Our Supreme Court in *Kelly v. Harvester Co.*, 278 N.C. 153, 158, 179 S.E. 2d 396, 398 (1971) stated the rule that "[o]n a motion by a defendant for a directed verdict in a jury case, the court must consider all the evidence in the light most favorable to the plaintiff and may grant the motion only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiff." (Citation omitted.)

The key in this case is whether plaintiff negotiated with Mrs. Pollmann as required by the terms of the listing contract. Negotiation has been defined as deliberation, discussion, or conference upon the terms of a proposed agreement, or as the act of settling or arranging the terms of a bargain or sale. *Dunklee v.*

*Shepherd,* 145 Colo. 197, 358 P. 2d 25 (1960). In *Werner v. Hendricks,* 121 Pa. Super. Ct. 46, 182 A. 748 (1936) the court held that merely calling attention to a property without further discussing the details which necessarily had to follow for consummation of a sale, could not be called negotiation.

The present case is similar to *Jessup v. La Pin,* 35 Wis. 2d 186, 150 N.W. 2d 342 (1967). In *Jessup* the court held that the plaintiff broker was not entitled to a commission upon a sale of defendant's property consummated within six months after the expiration of the one-month exclusive listing contract between them which provided for payment of a commission to the plaintiff if the listed property was sold during the life of such agreement, or if it was sold within six months of the termination thereof to anyone with whom the plaintiff had negotiated during the exclusive period. The only evidence in the record concerning the plaintiff's contacts with the purchasers was that on two occasions he had shown the property to them. That court noted that the purchasers did not testify and that there was no evidence of even a passing conversation or communication between them and the plaintiff. It did not appear that the plaintiff had discussed price or terms of sale, or that he had said anything to the purchasers concerning the property. In short the record was devoid of any proof that the plaintiff's efforts had brought such persons to the point of being likely purchasers.

Similarly in the present case, plaintiff never spoke with or met Mrs. Pollmann, and neither Mrs. Pollmann nor her daughter was called as a witness for the plaintiff. Plaintiff was aware that Mrs. Pollmann might help the Copps finance their purchase of the 73 acre tract of land. Plaintiff knew that the Copps also wanted to buy the homestead tract, and that in fact the Copps made an offer for that parcel which was rejected. Plaintiff gave pictures of all the land to Mrs. Copp, assuming that she would mail them to her mother in Arizona in order to obtain financing. Considering all of plaintiff's evidence in the light most favorable to him, there is no evidence that plaintiff's efforts had elevated Mrs. Pollmann to the level of a likely purchaser of the homestead tract. There is no evidence that plaintiff worked out any arrangements of a sale to Mrs. Pollmann.

The plaintiff argues that a landowner-seller could avoid paying a real estate commission simply by conveying the land to a

fiduciary or confidant, to a wife of the husband-buyer and so on. His examples all suggest either fraud or collusion, or the use of a trustee. In this case plaintiff has not alleged or offered any evidence of bad faith on the part of the defendant or evidence that Mrs. Pollmann purchased the homestead tract as an agent or trustee for the Copps.

The plaintiff further asserts that the test of whether negotiations occurred should be whether the broker was the procuring cause of the sale. Our Supreme Court stated the rules governing such brokers' commissions in *Realty Agency, Inc. v. Duckworth & Shelton, Inc.*, 274 N.C. 243, 250-51, 162 S.E. 2d 486, 491 (1968) as follows:

> "Ordinarily, a broker with whom an owner's property is listed for sale becomes entitled to his commission whenever he procures a party who actually contracts for the purchase of the property at a price acceptable to the owner. *Cromartie v. Colby*, 250 N.C. 224, 108 S.E. 2d 228; *Martin v. Holly*, 104 N.C. 36, 10 S.E. 83. If any act of the broker in pursuance of his authority to find a purchaser is the initiating act which is the procuring cause of a sale ultimately made by the owner, the owner must pay the commsision [sic] provided the case is not taken out of the rule by the contract of employment. *Trust Co. v. Goode*, 164 N.C. 19, 80 S.E. 62. The broker is the procuring cause if the sale is the direct and proximate result of his efforts or services. The term *procuring cause* refers to 'a cause originating or setting in motion a series of events which, without break in their continuity, result in the accomplishment of the prime object of the employment of the broker, which may variously be a sale or exchange of the principal's property, an ultimate agreement between the principal and a prospective contracting party, or the procurement of a purchaser who is ready, willing, and able to buy on the principal's terms.' 12 C.J.S. *Brokers* § 91, p. 209 (1938). *Accord*, 12 Am. Jur. 2d Brokers § 190 (1964)."

Plaintiff's evidence in this case simply does not support a claim that there was a series of unbroken events which resulted in a sale. Also in this case the sale occurred after the expiration of the listing contract. Therefore, this sale should be governed by the terms of the contract itself rather than by a procuring cause

theory. *Realty Agency, Inc. v. Duckworth & Shelton, Inc., supra.*

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

Chief Judge MORRIS and Judge HEDRICK concur.