WAYNE V. BROWN AND STROUT REALTY, INC. v. W. E. FULFORD, JR.

No. 8210SC4

(Filed 1 February 1983)

**Brokers and Factors § 6— right to real estate commission—summary judgment for defendant improper**

In an action brought by plaintiffs to recover their broker's commission allegedly due for selling defendant's property, the trial court erred in entering summary judgment for defendant where there was evidence from which the jury could find that defendant had an interest in the property, and where there was some evidence that the real estate agent arranged the first meeting between defendant and the eventual buyers of the property, which was some evidence that plaintiffs were at least an indirect cause of the sale.

APPEAL by plaintiffs from *Preston, Judge.* Judgment entered 22 September 1981 in Superior Court, WAKE County. Heard in the Court of Appeals 19 October 1982.

Plaintiffs brought this action to recover their broker's commission allegedly due for selling defendant's property, Belvedere Plantation, to United States Development Corporation. The following are the undisputed material facts in the pleadings and affidavits filed pursuant to defendant's motion for summary judgment.

On 21 October 1977, defendant had an option to purchase Belvedere Plantation from Wachovia Mortgage Company. The option was extended several times, it was finally due to expire 31 May 1978. The sale price for the property was $1,350,000.00. Fulford had paid $165,000.00 for the options. When he could not raise the money to purchase the property, he assigned the option to B. L. Lang. On 20 March 1978, Lang paid $785,000.00 and Fulford paid the difference, $400,000.00. Lang took the deed, but told Fulford he could buy it back within a year for $785,000.00 plus $100,000.00 and legal fees. In May 1979, the property was sold to United States Development Corporation for $1,900,000.00. The corporation was wholly owned by Terrance Domnick and David Dion. The proceeds were cash and a promissory note to Fulford secured by a second deed of trust.

The following contested material facts are contained in the pleadings and affidavits. Plaintiffs alleged, in their complaint, that

on 18 March 1978, Strout Realty and Fulford entered into a nonexclusive listing agreement where Strout Realty agreed to list Fulford's property, Belvedere Plantation, and Fulford agreed to pay a 10% commission if the property was sold. The listing agreement was as follows:

I (we) the seller(s) employ you to procure a purchaser ready, willing and able to buy this property at the listed price and terms, or at price and terms acceptable to me and to accept a deposit thereon. I represent that this property description and listing information are correct; that I shall convey a marketable title and furnish a good and sufficient deed.

If you procure a purchaser as defined above, I agree to pay you a commission of 10% of the selling price, or a minimum commission of $200, whichever is greater. All funds delivered to STROUT REALTY, INC. shall be retained in its authorized Escrow Trust Account. Any deposit forfeited by a buyer shall be divided one-half to you, the balance, less abstract, search, title, escrow or other charges, to me, except that your share shall not exceed your commission as defined above.

I reserve the right to sell the property to a buyer procured by myself or through another agent and in such case no commission or other charge shall be due you, provided such sale or transfer is not made directly or *indirectly* to or through your prospect.

This agreement is irrevocable but shall terminate with the sale of the property or by my giving you a withdrawal notice in writing which shall become effective thirty days from the date you receive it. This agreement shall expire three years from date without notice unless otherwise terminated as above, or unless I renew or extend it in writing. However, if within six months after the termination date of this agreement, I sell or transfer this property to a prospect procured by you prior to its termination I shall pay you your commission.

The listing of this property, and the continued endeavor of STROUT REALTY, Inc. or its representatives, to sell the

same shall constitute a good and sufficient consideration for this agreement.

I acknowledge I have read and received a copy of this listing; that it constitutes the entire agreement between us and that no other understandings exist, written or oral, affecting this agreement. (Emphasis added.)

No commission was paid. In his affidavit, plaintiff Brown alleged the following. Brown called Dion and told him that he had some property he might be interested in buying. Dion said that he was interested, but first needed to talk to Domnick. A week later, Dion, Domnick and Brown met in Raleigh and Brown gave Dion and Domnick information on Belvedere Plantation. Domnick told Brown that he did not know that Fulford had an option on the property. Dion and Domnick had not met Fulford, so Brown arranged a meeting for them in April 1978. The purpose of the meeting was to discuss the sale and ways to finance the purchase of Belvedere Plantation. On 3 May 1978, Brown and officials of Strout Realty met to discuss the possible sale of Belvedere Plantation to Dion and Domnick. On 10 May 1978, Staton, a Strout Realty representative, and Brown took Fulford and his attorney to see the property. Brown spoke with Fulford about the property on two other occasions in May. On 30 May 1978, Brown quit working for Strout Realty. On 26 June 1978, Brown and Staton met with Fulford and Lang to discuss the property. Lang said that although the property was in his name, it was Fulford's and he took title to it only because he advanced money to Fulford. Fulford gave Brown an exclusive listing for the property. In July through April, Brown met with several potential buyers. On 30 April 1979, Fulford told Brown that he was going to sell the property to Domnick and Dion, and he did not want Brown to attend the closing but he would take care of the commission.

Fulford's pleadings and affidavits contained the following material allegations. He said he signed the listing agreement but did not fill it out. According to Fulford, Staton probably filled out a blank listing which had his signature. He said he met with Brown, Staton, Dion and Domnick in April. Subsequently, he met Brown several times. On 26 June 1978, he gave Brown a 30-day exclusive listing on the property, with the full understanding that his only interest in the property was that he could repurchase it

from Lang. Fulford said he did not remember telling Brown when the closing would be, but he knew he did not tell Brown not to come to the closing or that he would take care of his fee.

According to Domnick's affidavit, Wachovia officials contacted him in early 1977 to see if he was interested in Belvedere Plantation. In late 1977 or early 1978, he learned that Fulford was trying to buy the property. In early 1978, he and Dion met Brown and Fulford, he spoke with Fulford about the possibility of marketing the property, not purchasing it himself. He discussed buying the property with Fulford several times prior to purchasing the property from Lang. According to Domnick, neither Brown nor anyone else from Strout Realty ever contacted him for the purpose of selling him Belvedere Plantation. He said that he spoke to Brown three or four times regarding Belvedere, but the substance of the conversations was that if Brown could arrange financing, he would be paid a fee based on a percentage of the amount of financing.

Defendant's motion for summary judgment was granted.

*David R. Cockman, for plaintiff appellants.*

*Everett and Cheatham, by C. W. Everett, Sr., and Robert W. Kaylor, for defendant appellee.*

VAUGHN, Chief Judge.

The sole issue is whether the trial court erred in granting defendant's motion for summary judgment. Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). The purpose of summary judgment is to bring litigation to an early decision on the merits without the delay and expense of trial where it can be shown that no material facts are at issue. *Kessing v. National Mortgage Corporation,* 278 N.C. 523, 180 S.E. 2d 823 (1971). Under Rule 56, the following evidence may be considered: admissions in the pleadings, depositions on file, answers to interrogatories, admissions on file, affidavits, and any other material which would be admissible in evidence or of which judicial notice may be taken. *Jernigan v.*

*State Farm Mutual Automobile Insurance Company,* 16 N.C. App. 46, 190 S.E. 2d 866 (1972); 10 Wright and Miller, Federal Practice and Procedure § 2724 (1973). Plaintiffs contend that summary judgment was improperly granted because there were two material facts at issue: whether Fulford had an interest in the property and whether the plaintiffs needed to be the procuring cause of the sale to United States Development Corporation to entitle them to a commission. Regarding Fulford's interest in the property, it is undisputed that he had paid $165,000.00 for his option. When he assigned the option to Lang, and Lang purchased the property, Fulford paid an additional $400,000.00 and Lang paid $785,000.00. Thus, although title was in Lang's name, Fulford had invested $565,000.00. Lang obviously thought Fulford had an interest in the property. In his deposition he said:

> A deed was made from Wachovia Mortgage Company to me dated the 20th day of March, 1978. . . . We bought the property. . . . When I am talking about "we" I mean Dr. Fulford and myself. We had to get it done before 5:00. Dr. Fulford and I bought the property but it was put in my name. . . . I would get my expenses back and he would get his costs back and we would split the profit.

Lang said that he offered the property to Fulford for $1,200,000.00 because Fulford already "owned part of the property." He also said "Dr. Fulford had a vested interest in this property. . . ."

Although Lang held legal title, Fulford held an equitable interest. For example, had he needed to enforce his interest, it had all the factors required for a purchase money resulting trust which is defined as follows: When one person pays for land but title is taken in another, a resulting trust commensurate with his interest arises in favor of the one who furnished the consideration. *Cline v. Cline,* 297 N.C. 336, 255 S.E. 2d 399 (1979). Although Fulford strenuously argues that he never had an interest in the property, other than an option, clearly there is evidence from which the jury could find that he had an interest in the property.

Fulford next contends that plaintiffs were not a procuring cause of the sale to United States Development Corporation, and they are not entitled to a commission as a matter of law. In general, a broker with whom an owner's property is listed

becomes entitled to a commission whenever he procures a party who actually contracts for the purchase of the property at a price acceptable to the owner. *Cromartie v. Colby*, 250 N.C. 224, 108 S.E. 2d 228 (1959). *See* Webster's Real Estate Law in North Carolina § 130 (Hetrick ed. 1981). "The broker is the procuring cause if the sale is the direct and proximate result of his efforts or services." *Realty Agency, Inc. v. Duckworth & Shelton, Inc.*, 274 N.C. 243, 251, 162 S.E. 2d 486, 491 (1968); *Accord Cooper v. Henderson*, 55 N.C. App. 234, 284 S.E. 2d 756 (1981).

In this case, however, the contract between the parties provided: "I [Fulford] reserve the right to sell the property to a buyer procured by myself or through another agent and in such case no commission or other charge shall be due you, provided such sale or transfer is not made directly or *indirectly* to or through your [Strout Realty, Inc.] prospect." (Emphasis added.) Thus, even if plaintiffs were only a indirect cause of the sale, they would be entitled to their commission under the terms of the contract. According to plaintiff Brown's affidavit, he arranged the first meeting between Fulford and the eventual buyers of the property, which is some evidence that plaintiffs were at least an indirect cause of the sale.

Plaintiffs contend that the trial court erred in failing to consider Irvin Staton's handwritten statement on the motion for summary judgment. Since we find that summary judgment was improperly granted, there is no need to address that question.

Reversed and remanded.

Judges WELLS and WHICHARD concur.