IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-490

No. COA21-411

Filed 19 July 2022

Richmond County, No. 20 CVS 508

JENNIFER LEAKE and ELIZABETH WAKEMAN, Plaintiffs,

v.

AUTOMONEY, INC., Defendant.

Appeal by Defendant from order entered 15 January 2021 by Judge Dawn M. Layton in Richmond County Superior Court. Heard in the Court of Appeals 8 February 2022.

> *Brown, Faucher, Peraldo & Benson PLLC, by James R. Faucher, for Plaintiffs-Appellees.*

> *Womble Bond Dickinson (US) LLP, by Michael Montecalvo and Scott D. Anderson, for Defendant-Appellant.*

WOOD, Judge.

AutoMoney, Inc. ("Defendant") appeals from an order denying its motion to dismiss under N.C. Gen. Stat. § 1A-1 Rules 12(b)(2) and 12(b)(6). On appeal, Defendant argues the trial court erred by 1) not enforcing the choice of law provisions within its loan agreements, and 2) determining minimum contacts existed to render personal jurisdiction over it. Defendant petitions this Court by writ of certiorari to review the trial court's denial of its motion to dismiss under Rule 12(b)(6). In our

discretion, we grant Defendant's writ of certiorari and affirm in part the trial court's order and reverse in part with respect to Elizabeth Wakeman's ("Plaintiff Wakeman") claims.

## I. Factual and Procedural Background

¶ 2 This dispute arises out of car title loan agreements Defendant made with Jennifer Leake ("Plaintiff Leake") and Elizabeth Wakeman (collectively, "Plaintiffs"). Defendant is a South Carolina corporation with its principal place of business in Charleston, South Carolina who provides car title loans, or loans secured by a motor vehicle, to individuals. Plaintiffs are North Carolina residents.

¶ 3 In 2015, Plaintiff Leake contacted Defendant to inquire about a car title loan. Plaintiff Leake "had heard about AutoMoney car title loans from a friend" and "called AutoMoney from North Carolina." Plaintiff Leake spoke with one of Defendant's employees who asked her "if . . . [she] had a car with a clear title[,] . . . [the] year, make and model" of her car, and "how much money . . . [she] wanted to borrow." Plaintiff Leake was told to drive to Defendant's store in South Carolina and to bring her car, car title, proof of employment, and driver's license to acquire the loan.

¶ 4 On August 7, 2015, Plaintiff Leake drove to Defendant's Cheraw, South Carolina office. There, she finalized and signed the loan agreement, presented her vehicle for an appraisal and inspection, and received a loan for $815.00 at an interest rate of 158.034%. Plaintiff Leake provided her vehicle as a security interest for the

loan. Per the terms of Defendant's loan agreement, a choice of law clause designated

South Carolina as the governing forum should a dispute arise:

> This Loan Agreement, Promissory Note[,] and Security Agreement is entered into by and between Lender/Secured Party and Borrower/Debtor in the state of South Carolina as of the above date, subject to the terms and conditions set forth and any and all representations Borrower has made to Lender in connection with this Loan Agreement, Promissory Note and Security Agreement. As Lender is a regulated South Carolina consumer finance company and you, as Borrower, have entered into this Agreement in South Carolina, this Agreement shall be interpreted, construed, and governed by and under the laws of the State of South Carolina, without regard to conflicts of law rules and principles (whether of the State of South Carolina or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of South Carolina.

Thereafter, Defendant utilized a third-party electronic title storage company to record Plaintiff Leake's loan with the North Carolina Department of Motor Vehicles.

¶ 5 Plaintiff Leake proceeded to make loan payments to Defendant over the phone from North Carolina, where she resided. Ultimately, Plaintiff Leake stopped making payments. Defendant thereafter repossessed Plaintiff Leake's car from a location in North Carolina and sold it.

¶ 6 On June 18, 2020, Plaintiffs filed an unverified complaint, arguing Defendant violated N.C. Gen. Stat. §§ 53-165, 75-1.1, and 24-1.1. Plaintiffs then amended their complaint and filed an unverified, amended complaint on June 29, 2020. On August

3, 2020, Defendant filed a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(2), 12(b)(3), and 12(b)(6). Plaintiffs and Defendant then filed numerous affidavits and exhibits with the trial court.

¶ 7 Linda Derbyshire ("Derbyshire"), Defendant's owner and executive manager, executed an affidavit stating the following: Defendant has no offices within North Carolina, does not make car title loans in North Carolina, is not registered to do business in North Carolina, does not have a representative agent in North Carolina, does not have a mailing address or telephone number in North Carolina, and does not directly market into North Carolina. Defendant only accepts loan applications in-person at one of its South Carolina locations. Furthermore, Defendant's customers can pay their loans directly to Defendant by mail, by telephone, by debit card, online, and through Western Union. Defendant sends customer service follow-ups, regardless of the customer's state of residency.

¶ 8 Defendant does have an internet site accessible by anyone, regardless of residency. Interested borrowers may contact Defendant through its website to inquire for more information about Defendant's business. At least one of Defendant's advertisements appeals specifically to North Carolina residents, stating, *inter alia*,

> [a]re you a North Carolina resident? We've got you covered! You are just a short drive away from getting the cash you need! Do you live in the Charlotte area? What about . . . or Wilmington? How about Hendersonville, Lumberton, Monroe, or Rockingham? There is a [sic] Auto

> Money Title Loans right across the border with a professional and courteous staff ready to help you get the cash you need. Is it worth the drive? Our thousands of North Carolina customers would certainly say it is.

¶ 9 Additionally, a representative for Steals & Deals, a North Carolina publication which primarily advertises in North Carolina counties along with four counties in South Carolina, explained by way of affidavit that from February 2013 to May 2019, Defendant ran a weekly advertisement in its publication. Affidavits from North Carolina residents who borrowed money from Defendant further attested to Defendant's involvement in North Carolina, stating Defendant offered referral fees in exchange for referring new North Carolina borrowers.

¶ 10 Notably, Plaintiff Wakeman did not file an affidavit nor any exhibits with the trial court. Derbyshire's affidavit attested she had "reviewed the records of loans made by AutoMoney, Inc. . . . [and] ha[d] not found any evidence that AutoMoney, Inc. made a loan to Elizabeth Wakeman."

¶ 11 On November 30, 2020, Defendant's motion to dismiss came on for hearing before the trial court. By order entered January 15, 2021, the trial court denied Defendant's motion to dismiss. Therein, the trial court found it possessed personal jurisdiction over Defendant and that "[t]he State of North Carolina has a strong interest in the enforcement of its consumer protection law and in protecting its citizens from what under North Carolina law are usurious loan rates." Defendant

gave timely notice of appeal. Defendant also petitions this court by a writ of certiorari to review the trial court's denial of its motion to dismiss under Rule 12(b)(6).[1]

## II. Jurisdiction

Defendant appeals from the trial court's denial of its motion to dismiss under Rule 12(b)(2) and Rule 12(b)(6). "[T]he denial of a motion to dismiss is not immediately appealable to this Court because it is interlocutory in nature." *Can Am South, LLC v. State*, 234 N.C. App. 119, 122, 759 S.E.2d 304, 307 (2014) (quoting *Reid v. Cole*, 187 N.C. App. 261, 263, 652 S.E.2d 718, 719 (2007)). A party may not appeal from "an interlocutory order or ruling of the trial judge unless such ruling or order deprives the appellant of a substantial right which he would lose if the ruling or order is not reviewed before final judgment." *North Carolina Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 437, 206 S.E.2d 178, 181 (1974) (citations omitted); *see also* N.C. Gen. Stat. § 1-277 (2021). Therefore, since Defendant's appeal from the trial court's order denying its motion to dismiss is interlocutory, we first determine whether this appeal affects a substantial right.

Turning first to Defendant's Rule 12(b)(2) motion, "motions to dismiss for lack of personal jurisdiction affect a substantial right and are immediately appealable."

---

[1] On September 23, 2021, Plaintiffs filed a motion with this Court to dismiss Defendant's appeal pertaining to the trial court's denial of its Rule 12(b)(6) motion. Plaintiff also requested an expedited ruling. This motion was referred to this panel.

*A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 257-58, 625 S.E.2d 894, 898 (2006) (citations omitted); *see* N.C. Gen. Stat. § 1-277(b) ("Any interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant . . . ."); *Can Am South, LLC*, 234 N.C. App. at 122, 759 S.E.2d at 307; *State ex rel. Cooper v. Ridgeway Brands Mfg.*, *LLC*, 188 N.C. App. 302, 304, 655 S.E.2d 446, 448 (2008). Thus, Defendant's appeal from the order denying its Rule 12(b)(2) motion is properly before us on appeal.

¶ 14 Regarding Defendant's Rule 12(b)(6) motion, Defendant petitions us by a writ of certiorari to review the denial of its Rule 12(b)(6) motion. We have held "it is an appropriate exercise of this Court's discretion to issue a writ of certiorari in an interlocutory appeal where there is merit to an appellant's substantive arguments and it is in the interests of justice to treat an appeal as a petition for writ of certiorari." *Cryan v. Nat'l Council of YMCA of the United States*, 280 N.C. App. 309, 2021-NCCOA-612, ¶ 17 (cleaned up) (quoting *Zaliagiris v. Zaliagiris*, 164 N.C. App. 602, 606, 596 S.E.2d 285, 289 (2004)). Particularly, we have issued a writ of certiorari when the issue in question is significant, important, and will promote judicial economy. *Id.* at ¶ 18. The issue raised by Defendant's motion to dismiss under Rule 12(b)(6) in the present case is significant as it raises the critical question of whether our State legislation prohibiting predatory title lending constitutes a fundamental public policy. Likewise, granting Defendant's petition for writ of certiorari will

promote judicial economy as this appeal represents one of thirty-two proceedings against Defendant in North Carolina courts, seven of which are currently before this Court. Therefore, in our discretion, we grant Defendant's petition for writ of certiorari to review its motion to dismiss under Rule 12(b)(6).

## III.    Discussion

¶ 15        Defendant raises several issues on appeal; each will be addressed in turn.

## A. Personal Jurisdiction

¶ 16        Defendant first contends the trial court erred by denying its Rule 12(b)(2) motion to dismiss. We disagree.

¶ 17        When reviewing the denial of a motion to dismiss for lack of jurisdiction, we determine whether "the findings of fact by the trial court are supported by competent evidence in the record . . . ." *Lab. Corp. of Am. Holdings v. Caccuro*, 212 N.C. App. 564, 567, 712 S.E.2d 696, 699 (2011) (quoting *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694, 611 S.E.2d 179, 183 (2005)). The trial court's conclusions of law are reviewed *de novo*. *Id.*; *see Beroth Oil Co. v. N.C. DOT*, 367 N.C. 333, 338, 757 S.E.2d 466, 471 (2014).

### 1. *Competent Evidence*

¶ 18        As an initial matter, Defendant first challenges the trial court's findings of fact as they relate to personal jurisdiction. Specifically, Defendant challenges the trial court's findings regarding 1) pre-lending phone calls, 2) contact initiation with North

Carolina residents, 3) receipt of loan payments, 4) perfection of car titles, and 5) contract formation. Looking first to the order's findings of fact regarding the pre-lending phone calls, contact initiation with North Carolina residents, and contract formation, the trial court made the following relevant findings of fact:

> 4. Defendant engages in telephone discussion[s] regarding [t]he details of its loan products with potential customers while those customers are in North Carolina.
>
> 5. Defendant calls potential borrowers who are located in North Carolina.
>
> 6. Defendant accepts online inquiries from North Carolina and then makes sales calls to North Carolina to the persons who submitted their contact information to Defendant.
>
> 7. Defendant offers loans over the phone to North Carolinians and Defendant receives acceptances of its loan offers by telephone from North Carolinians.
>
> 8. Defendant provides information about its loans over the phone to North Carolinians and makes inquiries concerning amounts sought to be borrowed.
>
> 9. Defendant directs North Carolina residents to travel out of state to its stores.
>
> 10. Defendant tells North Carolina borrowers what documents to bring to take out loans.
>
> 11. Defendant tells North Carolina borrowers to bring an extra key to the vehicle.
>
>  . . .
>
> 15. Defendant sends written solicitations into North Carolina.

¶ 19        A careful review of the affidavits filed by the North Carolina residents reveals competent evidence exists to support the trial court's findings of fact. These affidavits further reveal Defendant discussed the loan amounts and details of their loan security interests over the phone. Moreover, at deposition, Derbyshire admitted Defendant discussed its loan products over the phone. Thus, competent evidence exists to support findings of fact numbers 4 to 11 and 15.

¶ 20        Turning next to the trial court's findings of fact regarding Defendant's receipt of loan payments and payment of car title loans from North Carolina residents, the trial court made the following relevant findings of fact.

> 12. Defendant perfects security interests using the North Carolina Division of Motor Vehicles.
>
> 13. Defendant accepts payments from North Carolina.
>
> . . .
>
> 16. Defendant sends collection letters into North Carolina.
>
> 17. Defendant makes collections calls into North Carolina.
>
> 18. Defendant directs others to enter North Carolina to take possession of collateral motor vehicles.

¶ 21        After a careful review of the record, we conclude competent evidence exists to support these findings of fact. Derbyshire, in her affidavit, admitted Defendant perfects its security interest in the "appropriate state's department of motor vehicles . . . ." Hayes, owner of Associates Asset Recovery, LLC, attested that his company

has "recovered 442 motor vehicles for AutoMoney, Inc. in North Carolina." The North Carolina borrowers, in their affidavits, stated Defendant made collection calls into North Carolina, accepted payments from North Carolina, mailed written solicitation letters into North Carolina, and mailed collection letters into North Carolina. Therefore, we hold competent evidence exists to support findings of fact numbers 12, 13, and 16 to 18.

### 2. *Conclusions of Law*

¶ 22    Defendant next argues the trial court erred by concluding minimum contacts existed between it and North Carolina. We disagree.

¶ 23    This Court utilizes a two-step analysis to determine whether personal jurisdiction exists over a non-resident defendant: "First, the transaction must fall within the language of the State's long-arm statute. Second, the exercise of jurisdiction must not violate the due process clause of the fourteenth amendment to the United States Constitution." *Banc of Am. Sec. LLC*, 169 N.C. App. at 693, 611 S.E.2d at 182 (cleaned up) (citing *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 364, 348 S.E.2d 782, 785 (1986)); *see Lab. Corp. of Am. Holdings*, 212 N.C. App. at 566, 712 S.E.2d at 699. *But see Tom Togs, Inc.*, 318 N.C. at 365, 348 S.E.2d at 785 ("We have also held in considering N.C.G.S. § 1-75.4 that the requirements of due process, not the words of the long-arm statute, are the ultimate test of jurisdiction over a non-resident defendant[] . . . ."). Because Defendant does not challenge on

appeal the applicability of our long-arm statute, we confine our analysis to whether the trial court's conclusion it had personal jurisdiction over Defendant violated the requirements of due process.

¶ 24        The Due Process Clause of the Fourteenth Amendment to the United States Constitution "prevents states from rendering valid judgments against nonresidents." *In re F.S.T.Y.*, 374 N.C. 532, 534, 843 S.E.2d 160, 162 (2020) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490, 497 (1980)).  A defendant must "be given adequate notice of the suit . . . and be subject to the personal jurisdiction of the court[] . . . ." *World-Wide Volkswagen Corp.*, 444 U.S. at 291, 100 S. Ct. 564, 62 L. Ed. 2d at 497 (citations omitted); *accord In re F.S.T.Y.*, 374 N.C. at 534, 843 S.E.2d at 162.

¶ 25        Under the due process clause, *minimum contacts* must exist between the forum state and nonresident such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Tom Togs, Inc.*, 318 N.C. at 365, 348 S.E.2d at 786 (cleaned up) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95, 102 (1945)).  In other words, "there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws[] . . . ." *Tom Togs, Inc.*, 318 N.C. at 365, 348 S.E.2d at 786; *see also World-Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S. Ct. at 567, 62 L. Ed. 2d at 501 ("[I]t is that

the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."); *Cherry Bekaert & Holland v. Brown*, 99 N.C. App. 626, 632, 394 S.E.2d 651, 655 (1990). However, "our minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12, 20 (2014) (internal quotation marks omitted).

¶ 26        There are two types of personal jurisdiction recognized by our Supreme Court sufficient for establishing minimum contacts: general and specific jurisdiction. *Beem USA Limited-Liability Ltd. P'ship v. Grax Consulting, LLC*, 373 N.C. 297, 303, 838 S.E.2d 158, 162 (2020). "General jurisdiction is applicable in cases where the defendant's affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Id.* (internal quotations marks omitted) (quotation omitted); *see also Lab. Corp. of Am. Holdings*, 212 N.C. App. at 569, 712 S.E.2d at 701 ("General jurisdiction may be asserted over a defendant even if the cause of action is unrelated to defendant's activities in the forum as long as there are sufficient continuous and systematic contacts between defendant and the forum state." (internal quotation marks omitted)). Specific jurisdiction exists when "the controversy arises out of the defendant's contacts with the forum state . . . ." *Tom Togs, Inc.*, 318 N.C. at 366, 348 S.E.2d at 786; *see Beem USA Limited-Liability Ltd.*

*P'ship*, 373 N.C. at 303-04, 838 S.E.2d at 162.

¶ 27     In the case *sub judice*, Plaintiffs assert Defendant is subject to a suit in North Carolina under specific jurisdiction. As such, we limit our analysis to whether this State has specific jurisdiction over Defendant.

¶ 28     A specific jurisdiction inquiry analyzes "the relationship among the defendant, the forum state, and the cause of action . . . ." *Tom Togs, Inc.*, 318 N.C. at 366, 348 S.E.2d at 786; *see Banc of Am. Sec. LLC*, 169 N.C. App. at 696, 611 S.E.2d at 184. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284, 134 S. Ct. at 1121, 188 L. Ed. 2d at 20. This Court has established several factors to consider when evaluating whether minimum contacts exist: "(1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action with those contacts; (4) the interest of the forum state; and (5) the convenience to the parties." *A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 260, 625 S.E.2d 894, 899 (2006) (citation omitted); *see Sherlock v. Sherlock*, 143 N.C. App. 300, 304, 545 S.E.2d 757, 761 (2001); *Bruggerman*, 138 N.C. App. at 617, 532 S.E.2d at 219; *Cherry Bekaert & Holland*, 99 N.C. App. at 632, 394 S.E.2d at 655.

¶ 29     The evidence presented in this present case shows Defendant's conduct created a substantial connection with North Carolina. Defendant contacted North Carolina

residents through the following methods: 1) online advertisements; 2) advertisements in Steals & Deals, a local North Carolina publication; 3) telephone calls between Defendant and North Carolina residents while the residents were in North Carolina; 4) perfection of its security interest with North Carolina Department of Motor Vehicles; 5) offers of referral bonuses to North Carolina residents for referring new North Carolina customers; 6) receipt of loan payments from North Carolina residents within North Carolina; and 7) repossession of vehicles located within North Carolina.

¶ 30　　　Regarding Defendant's online advertisements, the trial court found in finding of fact number 1, "Defendant has advertised its loans in North Carolina." This court in *Havey v. Valentine* outlined the following tests to determine whether an Internet website warrants the exercise of personal jurisdiction:

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*Havey v. Valentine*, 172 N.C. App. 812, 816-17, 616 S.E.2d 642, 647-48 (2005). Notably, at least one of Defendant's internet advertisements directly targeted North Carolina:

> Are you a North Carolina resident? We've got you covered! You are just a short drive away from getting the cash you need! Do you live in the Charlotte area? What about . . .

> or Wilmington? How about Hendersonville, Lumberton, Monroe, or Rockingham? There is a [sic] Auto Money Title Loans right across the border with a professional and courteous staff ready to help you get the cash you need. Is it worth the drive? Our thousands of North Carolina customers would certainly say it is.

This advertisement is clearly a "manifested intent" to engage in business within North Carolina by recruiting our residents and providing them with information on how to acquire loans. Defendant's high interest car title loans would be void as a matter of public policy if offered by a company within North Carolina. Because Defendant attempts to circumvent North Carolina's predatory lending laws by operating from South Carolina while directly marketing to North Carolina residents, Defendant's internet advertisements satisfy the test for personal jurisdiction over internet communications stated in *Havey*.

¶ 31        Moreover, Defendant ran an advertisement in a North Carolina publication for six consecutive years. Although running an advertisement in a national publication is not sufficient, standing alone, to establish personal jurisdiction, this Court has yet to address whether advertisements in a local publication can give rise to personal jurisdiction. *See Stallings v. Hahn*, 99 N.C. App. 213, 216, 392 S.E.2d 632, 634 (1990); *Marion v. Long*, 72 N.C. App. 585, 587, 325 S.E.2d 300, 303 (1985). Certainly, placing an advertisement in a publication which primarily circulates in a single state is sufficient for a defendant to reasonably anticipate being haled into that State's court.

*See World-Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S. Ct. at 567, 62 L. Ed. 2d at 501.

¶ 32 Additionally, Defendant offered North Carolina borrowers a referral bonus if they referred new North Carolina residents for a car title loan. Likewise, Defendant entered North Carolina through third parties to repossess North Carolina borrowers' vehicles once borrowers fell behind on their payments.

¶ 33 Because Defendant had direct contact with North Carolina through its business operations, internet advertisements, and local publication advertisements, Defendant purposefully "avail[ed] [it]self of the privilege of conducting activities within" North Carolina. *Tom Togs, Inc.*, 318 N.C. at 365, 348 S.E.2d at 786 (citation omitted). In other words, the sum and quality of Defendant's contacts with this State, paired with Defendant's obvious intent to recruit North Carolina clients, is sufficient to establish personal jurisdiction. Accordingly, we hold the trial court did not err by denying Defendant's Rule 12(b)(2) motion to dismiss.

**B. Rule 12(b)(6) Motion**

¶ 34 Defendant next asserts the trial court erred by denying its motion to dismiss under Rule 12(b)(6). After a careful review of the record and applicable law, we conclude the trial court committed no error.

¶ 35 We review a trial court's ruling on a motion to dismiss under Rule 12(b)(6) *de novo*. *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (2003),

*aff'd per curiam,* 357 N.C. 567, 597 S.E.2d 673-74 (2003); *see Grich v. Mantelco*, LLC, 228 N.C. App. 587, 589, 746 S.E.2d 316, 318 (2013).  A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of the complaint."  *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (citing *Sutton v. Duke*, 277 N.C. 94, 176 S.E.2d 161 (1970)).  When "ruling on . . . [a Rule 12(b)(6)] motion the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted." *Stanback*, 297 N.C. at 185, 254 S.E.2d at 615  (citing *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 229 S.E.2d 297 (1976)); *see Sutton*, 277 N.C. at 103, 176 S.E.2d at 166 ("[A] complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." (emphasis omitted)); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80, 84 (1957), *abrogated by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

¶ 36        Here, Defendant argues the trial court should have granted its Rule 12(b)(6) motion because of the South Carolina choice of law provision within its loan agreement mandating the application of South Carolina law and, thus, precluding Plaintiff's claims arising from North Carolina law.  As a general rule, a "court interprets a contract according to the intent of the parties to the contract."  *Cable Tel Servs. v. Overland Contr.*, 154 N.C. App. 639, 642, 574 S.E.2d 31, 33 (2002) (citing

*Bueltel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 631, 518 S.E.2d 205, 209 (1999));
*see Duke Power Co. v. Blue Ridge Electric Membership Corp.*, 253 N.C. 596, 602, 117
S.E.2d 812, 816 (1961). However, the intent of the parties must not "require the
performance of an act prohibited by law." *Duke Power Co.*, 253 N.C. at 602, 117
S.E.2d at 816. When "parties to a contract have agreed that a given jurisdiction's
substantive law shall govern the interpretation of the contract, such a contractual
provision will be given effect." *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261
S.E.2d 655, 656 (1980) (first citing *Bundy v. Commercial Credit Co.*, 200 N.C. 511,
516, 157 S.E. 860, 863 (1931); then citing *Fast v. Gulley*, 271 N.C. 208, 155 S.E.2d 507
(1967)); *see Bueltel*, 134 N.C. App. at 631, 518 S.E.2d at 209 ("[I]t is apparent that
when a choice of law provision is included in a contract, the parties intend to make
an exception to the presumptive rule that the contract is governed by the law of the
place where it was made."). A choice of law provision is binding "on the interpreting
court as long as they had a reasonable basis for their choice and the law of the chosen
State does not violate a fundamental public policy of the state or otherwise applicable
law." *Torres v. McClain*, 140 N.C. App. 238, 241, 535 S.E.2d 623, 625 (2000) (quoting
*Behr v. Behr*, 46 N.C. App. 694, 696, 266 S.E.2d 393, 395 (1980)); *see also Tanglewood
Land Company*, 299 N.C. at 262, 261 S.E.2d at 656.

¶ 37        Here, Plaintiffs assert that regardless of the choice of law provision, Defendant
is subject to North Carolina law under N.C. Gen. Stat. § 53-190. As such, we must

determine whether N.C. Gen. Stat. § 53-190 constitutes a "fundamental public policy"

or "otherwise applicable law" as to invalidate Defendant's choice of law provision. *See*

*Torres*, 140 N.C. App. at 241, 535 S.E.2d at 625.

### 1. *N.C. Gen. Stat. § 53-190 is a Fundamental Public Policy*

N.C. Gen. Stat. § 53-190 states:

> (a) No loan contract made outside this State in the amount or of the value of fifteen thousand dollars ($15,000) or less, for which greater consideration or charges than are authorized by . . . [N.C. Gen. Stat. §§] 53-173 and . . . 53-176 of this Article have been charged, contracted for, or received, shall be enforced in this State. Provided, the foregoing shall not apply to loan contracts in which all contractual activities, including solicitation, discussion, negotiation, offer, acceptance, signing of documents, and delivery and receipt of funds, occur entirely outside North Carolina.
>
> (b) If any lender or agent of a lender who makes loan contracts outside this State in the amount or of the value of fifteen thousand dollars ($15,000) or less, comes into this State to solicit or otherwise conduct activities in regard to such loan contracts, then such lender shall be subject to the requirements of this Article.
>
> (c) No lender licensed to do business under this Article may collect, or cause to be collected, any loan made by a lender in another state to a borrower, who was a legal resident of North Carolina at the time the loan was made. The purchase of a loan account shall not alter this prohibition.

N.C. Gen. Stat. § 53-190 (2021). In other words, N.C. Gen. Stat. § 53-190 aims to

protect North Carolina residents from predatory lending by nonresident, predatory

loan corporations that infiltrate North Carolina through the contractual activities

listed above.

¶ 39    This Court has yet to address whether N.C. Gen. Stat. § 53-190 encompasses a fundamental public policy of North Carolina. In making today's determination, we are guided by our case law concerning predatory lending. In *State ex rel. Cooper v. NCCS Loans, Inc.*, defendant offered immediate cash advances under the guise of an internet store wherein the customer was required to sign a year-long contract for "internet access." *State ex rel. Cooper v. NCCS Loans, Inc.*, 174 N.C. App. 630, 635-36, 624 S.E.2d 371, 375 (2005). The customers were charged "100 times more" for internet access compared to legitimate internet providers and a high interest rate on the cash advanced. *Id.* at 637-38, 624 S.E.2d at 376-77. The trial court granted summary judgment against defendants for usury, violation of the North Carolina Consumer Finance act, and unfair and deceptive trade practices. *Id.* at 633, 624 S.E.2d at 373-74. On appeal, defendant challenged, among other things, the trial court's entry of summary judgment on plaintiff's claim of unfair and deceptive trade practices. *Id.*, 174 N.C. App. at 640, 624 S.E.2d at 378. We agreed with the trial court, stating "it is a 'paramount public policy of North Carolina to protect North Carolina resident borrowers through the application of North Carolina interest laws.' " *Id.* at 641, 624 S.E.2d at 378; *see* N.C. Gen. Stat. § 24-2.1(g) (2021); *Odell v. Legal Bucks, LLC*, 192 N.C. App. 298, 319, 665 S.E.2d 767, 780 (2008).

¶ 40    Moreover, a review of North Carolina's General Assembly's legislative action

regarding predatory lending within our State further guides our decision. On December 20, 2006, our Supreme Court in *Skinner v. Preferred Credit*, addressed whether North Carolina had personal jurisdiction over the 1997-1 Trust, a nonresident defendant who held high interest loans. *Skinner v. Preferred Credit*, 361 N.C. 114, 119, 638 S.E.2d 203, 208 (2006). In a 4 to 3 decision, Justice Paul Newby writing for the majority concluded "North Carolina courts lack personal jurisdiction over a nonresident trust that has no connections to this state other than holding mortgage loans secured by deeds of trust on North Carolina property." *Id.* at 127, 638 S.E.2d at 213. Justice Timmons-Goodson strongly dissented, writing the "Court's decision today aids in the exploitation of our state's most vulnerable citizens[,]" and "the majority's decision effectively undermines the right of unwitting victims of predatory lending practices . . . ." *Id.* at 127, 638 S.E.2d at 213 (Timmons-Goodson, J., dissenting).

¶ 41    Less than four months after the decision in *Skinner*, our General Assembly enacted House Bill 1374 overturning the *Skinner* case. The bill was entitled "An Act to Overturn the Shepard Case and Amend the Limitation Regarding Actions to Recover for Usury; *To Overturn The Skinner Case* And Amend The Long-Arm Statute To Allow North Carolina Courts to Exercise Personal Jurisdiction Over Certain Nonresident Defendants; To Require That a Notice of Foreclosure Contain Certain Information; And to Provide for Mortgage Debt Collection and Servicing." 2007 NC

Session Laws, House Bill 1374 (emphasis added). In addition to House Bill 1374, our general assembly proceeded to pass four other bills addressing consumer mortgage lending in the summer of 2007. Susan E. Hauser, *Predatory Lending, Passive Judicial Activism, and the Duty to Decide*, 86 N.C.L. Rev. 1501, 1555 (2008).

¶ 42 Based on our General Assembly's legislation prohibiting predatory lending, its swift response to *Skinner*, and our case law governing predatory lending practices within the State of North Carolina, the issue of predatory lending is clearly a question of fundamental public policy for this State. Thus, since N.C. Gen. Stat. § 53-190 protects North Carolina citizens from predatory lending and our conclusion it constitutes a fundamental public policy of this State, we next determine whether Defendant violated this statute.

¶ 43 In pertinent part, N.C. Gen. Stat. § 53-190 prohibits predatory loans made elsewhere unless "all contractual activities, including solicitation, discussion, negotiation, offer, acceptance, signing of documents, and delivery and receipt of funds, occur entirely outside North Carolina." § 53-190(a). "Negotiation" is defined as "deliberation, discussion, or conference upon the terms of a proposed agreement, or as the act of settling or arranging the terms of a bargain or sale." *Cooper v. Henderson*, 55 N.C. App. 234, 235, 284 S.E.2d 756, 757 (1981) (citation omitted). "Discussion" is defined as "[t]he act of exchanging views on something; a debate." *Discussion*, Black's Law Dictionary (10th ed. 2014).

¶ 44 Here, Defendant negotiated and discussed the terms of the loan agreement with North Carolina residents while they were in North Carolina. Plaintiff Leake, in her deposition, recounted the following:

> I called AutoMoney from North Carolina. . . . The AutoMoney employee I spoke with asked me if I had a car with a clear title. I told them I did and they asked me for information about my car like year, make[,] and model. . . . The AutoMoney employee next asked me how much money I wanted to borrow. I told them $1000.00.

Per Plaintiff Leake's affidavit, Defendant discussed details of the loan amount and the security interest for the loan with her. Furthermore, Derbyshire, in her deposition, stated Defendant would provide information about its business to potential borrowers who contacted Defendant. Because Defendant's business was providing high interest loans, these details would naturally be included in "information about its business."

¶ 45 By discussing its business and the terms of its contract over the phone with North Carolina residents, Defendant discussed and negotiated loans within North Carolina as defined by N.C. Gen. Stat. § 53-190. Therefore, we conclude Defendant violated N.C. Gen. Stat. § 53-190 and, in turn, violated a fundamental public policy of North Carolina. As such, we hold the choice of law provision within Defendant's loan agreements is void as a matter of public policy and the trial court properly denied Defendant's Rule 12(b)(6) motion.

### C. Plaintiff Wakeman

¶ 46 Finally, Defendant alleges the trial court erred by not dismissing Plaintiff Wakeman from this action due to a lack of personal jurisdiction. Additionally, Defendant challenges findings of fact numbers 28 and 29, arguing they are not supported by competent evidence. Finding of fact number 28 provides, "Plaintiff Elizabeth Wakeman is not a resident of Richmond County but is a resident of North Carolina[]"; finding of fact number 29 states, "Ms. Wakeman went to an AutoMoney store in South Carolina and exchanged Defendant's loan check for her North Carolina car title."

¶ 47 When a finding of fact is challenged, we look to see whether competent evidence supports the finding of fact. *Lab. Corp. of Am. Holdings*, 212 N.C. App. at 567, 712 S.E.2d at 699. Here, Plaintiffs' unverified, amended complaint frequently stated "each Plaintiff" thereby implicating both Plaintiff Leake and Plaintiff Wakeman. The complaint, however, did not specifically mention Plaintiff Wakeman. Although an unverified complaint "is not an affidavit or other evidence[,]" *Hill v. Hill*, 11 N.C. App. 1, 10, 180 S.E.2d 424, 430 (1971), when "unverified allegations in the complaint meet plaintiff's initial burden of proving the existence of jurisdiction and defendants do not contradict plaintiff's allegations in their sworn affidavit, such allegations are accepted as true and deemed controlling." *Berrier v. Carefusion 203, Inc.*, 231 N.C. App. 516, 521, 753 S.E.2d 157, 162 (2014) (cleaned up) (quoting *Inspirational*

*Network, Inc. v. Combs*, 131 N.C. App. 231, 235, 506 S.E.2d 754, 758 (1998)).

¶ 48        Other than Plaintiffs' unverified complaint, the only other source of evidence concerning Plaintiff Wakeman is the sworn affidavit of Derbyshire. In her affidavit, Derbyshire stated, "I have reviewed the records of loans made by AutoMoney, Inc. I have not found any evidence that AutoMoney, Inc. made a loan to Elizabeth Wakeman." When, as in this case, a defendant submits some form of evidence to counter a plaintiff's unverified claims, the plaintiff may not rest upon these claims but must file "some form of evidence in the record [to] support[] the exercise of personal jurisdiction." *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615-16, 532 S.E.2d 215, 218 (2000); *see Brown v. Refuel Am., Inc.*, 186 N.C. App. 631, 634, 652 S.E.2d 389, 392 (2007). Indeed, "the plaintiff's burden of establishing *prima facie* that grounds for personal jurisdiction exist can still be satisfied if some form of evidence in the record supports the exercise of personal jurisdiction." *Bruggeman*, 138 N.C. App. at 616, 532 S.E.2d at 218 (citation omitted).

¶ 49        Here, Plaintiffs did not file an affidavit or any other evidence with the trial court to support the exercise of jurisdiction. Accordingly, because Derbyshire's affidavit contradicts Plaintiffs' unverified, amended complaint, we hold finding of fact number 29 is not supported by competent evidence. Notwithstanding, Derbyshire's affidavit did not address whether Plaintiff Wakeman is a resident of North Carolina; as such, we hold finding of fact number 28 is supported by competent evidence.

¶ 50        Thus, the only finding of fact supporting the trial court's exercise of personal jurisdiction over Plaintiff Wakeman is that she is a citizen of North Carolina. The mere fact Plaintiff Wakeman is a citizen of North Carolina is insufficient to establish specific jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781, 198 L. Ed. 2d 395, 404 (2017) ("For specific jurisdiction, a defendant's general connections with the forum are not enough."). There is no evidence within the record to show Plaintiff Wakeman interacted with Defendant, received a loan from Defendant, or contacted Defendant in any manner. Although Plaintiff Leake was in contact with Defendant, entered into a loan agreement with Defendant, and had her car repossessed by Defendant, Plaintiff Leake's interactions with Defendant "does not allow the State to assert specific jurisdiction over" Plaintiff Wakeman's claims. *Id.* at 1781, 198 L. Ed. 2d at 405 ("As we have explained, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." (cleaned up)). Therefore, notwithstanding our holding today that personal jurisdiction exists over Plaintiff Leake's claims, we hold the trial court did not have personal jurisdiction over Plaintiff Wakeman's claims. As such the trial court erred by allowing Plaintiff Wakeman's claims to proceed.

## IV.    Conclusion

¶ 51        For the foregoing reasons, Defendant is subject to personal jurisdiction in North Carolina. Furthermore, Defendant's actions violated N.C. Gen. Stat. § 53-190;

thus, the trial court did not err by denying Defendant's motion to dismiss under Rule 12(b)(6).  However, the trial court does not have jurisdiction over Defendant regarding Plaintiff Wakeman's claims.  The order of the trial court is affirmed in all respects except for Plaintiff Wakeman's claims, and thus the portion of the order pertaining to Plaintiff Wakeman is reversed.

AFFIRMED IN PART; REVERSED IN PART.

Judges HAMPSON and GORE concur.